WESTERN CAROLINA REALTY COMPANY, A PARTNERSHIP, AND B. H. SUMNER, v. J. E. RUMBOUGH AND WIFE, MARTHA E. RUMBOUGH, M. C. MOORE, ET ALS.

(Filed 19 December, 1916.)

**1. Principal and Agent—Evidence—Husband and Wife.**

The mere relationship of husband and wife is not evidence of authority of the former to lease the lands of the latter.

**2. Same—Declarations of Agent.**

Evidence is sufficient of the agency of the husband to contract with a real estate agency to lease the wife's lands for a term of years upon a commission on the rental receipts, which tends to show that he negotiated with the agency upon that basis, changed the original terms of the proposed lease, stating it was not in conformity with his wife's wishes, and she and her husband afterwards signed the lease with a tenant procured by the agency, in the presence of others, who testified at the trial that she willingly signed the lease, stating at the time it was a fair and acceptable one; and she afterwards received the rental, less plaintiff's commissions, the testimony is not objectionable as a proof of agency by the sole declarations or acts of one representing himself as such agent.

**3. Same—Ratification.**

Where the husband assumes to act for his wife in contracting with a real estate agency to rent her lands upon a commission based on the rental receipts, and there is direct evidence that she willingly signed a lease with a tenant procured by the realty company in the presence of a member of the company, expressing her satisfaction therewith, and there is further evidence that the tenant entered into possession of the property, lived up to the terms of the lease, paid rent to the realty company, who remitted by check through the husband, payable directly to the wife, less the commissions agreed to by him: *Held,* the act of the wife in signing the lease in the presence of a member of the realty company, and accepting remittances for the rental money, less commissions agreed upon with the husband, is evidence of her ratification of the contract made by him with the realty company in her behalf.

**4. Principal and Agent—Scope of Agency.**

A principal is bound by the acts of his agent in leasing his lands which were done in the furtherance of the agency and within the scope of the agent's employment. *Latham v. Fields,* 163 N. C., 356, cited and applied.

**5. Principal and Agent—Real Estate—Rentals—License Tax—Statutes.**

One who is employed by a rental agency upon a share in commissions based upon business which he may bring to such agency, the latter of which has paid the license tax required by ch. 201, sec. 32, Public Laws 1913, acts as the agent of the company thus employing him, and under its license, and is not himself engaged in transactions in selling and renting real estate within the intent and meaning of the statute.

**6. Principal and Agent—Parties.**

　　Where one acts solely as the agent of another in consummating a transaction for the lease of lands, looking to his principal alone for his compensation, he is not a proper party to an action to recover upon the contract, and as to him the action is properly dismissed.

**7. Issues—Appeal and Error.**

　　In this case the issues submitted by the court to the jury embraced all the controverted questions, and are held to be the proper ones.

　　CIVIL ACTION tried before *Adams, J.,* and a jury, at BUNCOMBE Superior Court.

　　The action was brought to recover the amount of commissions for leasing real property in Asheville, N. C., and collecting the rent due for four months under a contract alleged by the plaintiff to have been made with the defendants Rumbough and wife. The other defendants are the lessee, Lowenbein-Rutenberg Company, and M. V. Moore, the purchaser of the property from the Rumboughs.

　　At the trial, judgment of nonsuit as to all defendants except Rumbough and wife was entered, and as to them the plaintiff Western Carolina Realty Company recovered $46.66. The court submitted no issue as to the rights of the plaintiff Sumner, but dismissed him from the case.

　　The testimony tended to show that the realty company was a partnership engaged in the real estate business in Asheville, North Carolina; that Sumner had an arrangement with the realty company by which he was to get a part of the commissions of such business as he brought to their attention, or did through their office with the assistance of Wolfe, one of the plaintiffs. The plaintiffs carried on negotiations with the defendant J. E. Rumbough concerning the leasing of certain real estate which belonged to the *feme* defendant; these negotiations covered several months. Finally Sumner and Wolfe went to Rumbough's office and it was agreed that if they procured a tenant for the building for a period of fifteen years, who would pay $2,700 a year, the defendants would pay to the plaintiffs 5 per cent commissions on the rental. Finally Rumbough directed them to make a change in the lease so that the tenant would pay $2,800 a year and the lease would run for ten years, with the privilege of five years additional, and said that then his wife would sign it. This was done, and the lease was turned over to him and he took it home to his wife and kept it a day or two. It was subsequently signed by Rumbough and wife. The plaintiffs were to get 5 per cent commissions for the entire term, on a monthly rental, as it was collected, for their services in negotiating the lease. The lease went into effect some time in April, and the plaintiffs

collected the rent for June, July, August, and September, and made payments on account of repairs and other things, and paid the balance of the rent by giving checks to Mr. Rumbough which were payable to Mrs. Rumbough, which checks were paid after having been indorsed by Mrs. Rumbough through J. E. Rumbough. From the rents thus paid, the plaintiffs deducted 5 per cent commissions. On 20 August, 1915, Rumbough and wife conveyed the leased property to the defendant Moore, and thereafter refused to pay to the plaintiffs any further sum on their commissions, and Moore notified the tenant not to pay any rents to the plaintiffs, and this action was brought to recover commissions on the rent for the months of September, October, November, and December, 1915. The defendants Rumbough and wife denied that they or either of them ever agreed to pay the plaintiffs any sum whatsoever for their services in securing said tenant, but they introduced no evidence.

Sumner talked with Rumbough about the building several months; about leasing it and selling it. Rumbough first fixed the price at $2,700 per annum. The negotiations went on several months. Rumbough said change the lease to $2,800 and the term to ten years and his wife would sign it; Rumbough agreed to pay 5 per cent of the rental for the term; he took the lease and kept it two or three days; it was signed by the lessee and taken to Rumbough's house and he and his wife signed it; after the first lease was drawn up Rumbough said his wife refused to sign it for fifteen years, but if they would make it for ten years she would sign if they would also make the rent $2,800 instead of $2,700. Sumner talked with Mrs. Rumbough when the lease was signed. She said it was a fair lease, and signed it after the changes were made. Plaintiffs collected the rents and paid same to Mrs. Rumbough, less their commissions, for several months; Mrs. Rumbough gave an option to sell the property to Millard & Lassiter; the negotiations were with Mr. Rumbough only; these negotiations went on two or three years. The defendants were not called as witnesses.

As defendant moved for a nonsuit, it will be proper to state a part of the testimony of J. W. Wolfe, who said:

"B. H. Sumner and I went to see Rumbough for the purpose of fixing some basis upon which a lease could be made. Rumbough at that time agreed on $2,700 for a fifteen-year lease and stated he would pay commissions if we had a client who would take it for fifteen years. He had previously said he wanted $2,500. The lease was prepared on a basis of $2,700 and delivered to Rumbough, and he came back and said that his wife—that they could not sign the lease for $2,700 for fifteen years, but that if we would make it for ten years with a renewal clause for five years, and for $2,800, they would sign it. We got those

changes made, the lease signed, and delivered to Rumbough, and .it was afterwards signed by Mr. and Mrs. Rumbough. I was not present. Mr. Sumner and Mr. Wearn took it out and brought it back. I think it was a few days from the time it was drawn before it was executed. Mrs. Rumbough was to pay 5 per cent during the term of the lease. The usual rule for collecting commissions on rentals is for the party who makes the lease to collect the rents."

Q. "How were your commissions paid?" A. "Paid out of the proceeds of the property. The lease went into effect some time in April. The rents were to be paid at the office of the Western Carolina Realty Company. Rumbough said I could deduct the commissions from the rents each month and hold it until he called for it. This was about the commencement of the lease. We collected the rents. I think there were two months allowed to the lessees for the time they were making repairs. We collected June, July, August, and September, $233.33 each month. Paid some of the money on repairs. These payments were made at the instance of Mr. Rumbough. We gave him a check for the balance, payable to Mrs. Rumbough."

The court charged the jury, in part, as follows:

"The allegation substantially is this: That the defendants agreed with the plaintiff that if the plaintiff would secure a tenant for the building described in the complaint who was willing to take the same for a period of ten years and pay the sum of $2,800 per annum rental therefor, they, the defendants, would pay to the plaintiffs 5 per cent monthly on the rental for their services in procuring a tenant and collecting the rent for the building. The plaintiffs allege further that they procured a tenant to whom the lease was made upon the terms fixed by the defendants, and that they have failed to pay to the plaintiffs the commissions due on the rental value for certain months, and that they are entitled to recover against these defendants the amount so alleged to be due. These allegations are denied by the defendants. They deny that any such contract was made between the defendants or either of them and the plaintiffs, and deny, therefore, that any liability exists as to them."

The court then read the first issue to the jury and charged further as follows:

"The plaintiffs are required to satisfy you by the greater weight of all the evidence that such a contract was made by the defendants, or at least by one of the defendants, in order to entitle them to an affirmative answer to this issue. If you find from the evidence and its greater weight that the defendants J. E. Rumbough and his wife made the contract as alleged, your answer to the first issue will be merely 'Yes.' Unless you find by the greater weight of the evidence that the contract

was made by these defendants, or at least one of them, you will answer it 'No.' If you find that the contract was made by one and not by the other, your answer to the issue in that event will be 'Yes,' naming the defendant by whom you find the contract to have been made." "The plaintiffs contend that J. E. Rumbough came to the office of the plaintiffs and, after negotiating directly with one member of the firm, Wolfe, and another person who was in the employ of the firm, Sumner, entered into a contract with them to this effect, that if the plaintiffs would procure a tenant or lessee for a certain lot and building in the city of Asheville for a stated period at an agreed price, the defendants would pay to the plaintiffs 5 per cent monthly on the rental value. That after this proposal was made by Mr. J. E. Rumbough on behalf of himself and his wife, the plaintiff procured a lessee, and the property in question was leased for a period of ten years at the annual rental of $2,800; that under the terms of the contract the plaintiffs were to receive monthly 5 per cent on the annual rental value. Plaintiffs contend that the monthly rental value is $233.33, and that the amount due per month is 5 per cent of this amount, or $11.66 for each month; and that for certain months they have not received the amount due, and they are entitled to recover the aggregate of the amount for the months for which there is an arrearage of rent. The plaintiffs further contend that, at the time the contract was made, the defendant represented not only himself for his individual benefit, but his wife also, and that he was the agent of his wife in making the contract, representing not only himself, but her, and that they are entitled to recover, not only against him, but against his wife also. On the other hand, the defendants contend that there was no liability on the part of either of the Rumboughs; the husband didn't make the alleged contract, that he did not represent his wife, that he had no authority to represent her, and for that reason they insist there can be no liability on the part of either one, and that your answer to the issue should be 'No.'

"In passing upon the contentions you may consider evidence tending to show whether or not the contract was in fact made by J. E. Rumbough and the plaintiff. Unless you find that such contract was made by him either in his representative capacity or in his own individual capacity and his representatve capacity, you will answer the first issue 'No.' If you find that the contract was made by him, you will then consider evidence tending to show whether it was made for the benefit of his wife as her agent, and also for his individual benefit; and in passing upon the question as to whether or not he acted in the capacity of agent for his wife you may consider evidence tending to show whether or not he had this property in his charge for some time pre-

ceding the date of the alleged contract; any declaration made by the *feme* defendant in regard to the contract, which was in fact made between the defendants and the lessee; the length of time the defendant J. E. Rumbough negotiated in the deal or trade concerning the property, together with the circumstances arising from the evidence, for the purpose of finding out whether or not, if you find such contract was made, the wife either previously appointed her husband for the purpose of effecting such transaction or whether after the transaction was effected she in fact ratified it with full knowledge of what had been done.

"If you find from the evidence that J. E. Rumbough was a duly authorized agent of his wife for leasing the property, doing such things as were necessary to make a valid and satisfactory lease, and, while engaged in the scope of his agency, made a contract with the plaintiff Western Carolina Realty Company, by the terms of which the realty company was to procure a lessee and for an agreed term at a stipulated rental price, and the realty company did in fact find such lessee, to whom the lease was executed and who complied with the agreed terms; and if you further find that the defendant J. E. Rumbough, on behalf of himself and also on behalf of his wife and for the benefit of both, and for the benefit, of course, of each, contracted to pay the realty company 5 per cent monthly on the rental value as consideration of the services rendered, your answer to the first issue will be 'Yes.'"

The court then charged the jury that if, under the same facts and circumstances just stated to them as to the joint liability of the Rumboughs, they should find that the defendant J. E. Rumbough as agent for his wife, and for her benefit only, and not in his own behalf, contracted to pay the realty company 5 per cent monthly on the rental value as consideration for services rendered, they would then and in that event find that the contract was made only by Mrs. Rumbough, and not by J. E. Rumbough, and they would answer the issue "Yes; Martha E. Rumbough"; and unless they answered the first issue "Yes," under the instructions which had been given, they would answer it "No."

The court further charged:

"If you find from the evidence that he was the duly authorized agent of his wife for the purpose of effecting a lease, you will then find that he had general power to do what was usual and necessary to carry on the business entrusted to him; that is, to do those acts and make those contracts usually done and made by other agents in the same line of business, under the same circumstances.

"There is no evidence that the defendant Martha E. Rumbough made any contract personally with the plaintiffs relative to the renting of her property mentioned in the complaint, and before the jury will be

authorized in finding that she made such contract they must find by the greater weight of the evidence, the burden being upon the plaintiffs, that J. E. Rumbough was authorized by her to make the contract alleged by the plaintiff or that she ratified such contract with full knowledge of the same.

"There is no presumption of agency from the relationship of husband and wife. A husband may act as agent for his wife, but in order to bind her he must be previously authorized to act, or, after his acts have been done, she must ratify them after receiving full knowledge thereof; and to establish such agency the evidence must be clear, satis-. factory, and sufficiently strong to explain and remove the equivocal character in which she is placed by reason of the relationship of husband and wife."

The court then charged the jury as to the second issue, that is, as to the amount due, if anything.

The jury found by their verdict that the defendants had agreed to pay a commission of 5 per cent monthly on the rent, and allowed plaintiffs the commission for four months due at the commencement of the action.

Judgment was entered upon the verdict, and defendants appealed.

*Martin, Rollins & Wright for plaintiffs.*
*Merrimon, Adams & Adams for defendants.*

WALKER, J., after stating the case: We are of the opinion that there was evidence to show that Mr. Rumbough, in his negotiations with the plaintiff realty company for leasing the property of Mrs. Rumbough, was acting as her agent, and this evidence did not consist in declarations and acts of the agent, which would be incompetent. *Francis v. Edwards,* 77 N. C., 271; *Daniel v. R. R.,* 136 N. C., 517; *Jackson v. Tel. Co.,* 139 N. C., 347; *McCormick v. Williams,* 152 N. C., 638. There is proof, apart from what Mr. Rumbough did or said, which tends to show that he was acting for and in behalf of his wife throughout the transaction, and with her knowledge and consent, and with authority so to act·derived from her beforehand. She did not make the lease herself—that is, personally—and all the evidence goes to prove that the transaction was conducted by her husband until the lease was carried to her and she signed it, saying at the time that she thought it was a fair lease to both parties, and the lease contained a clause to the effect that the rents were to be paid at the office of plaintiff. The first proposal was that the lease should run for fifteen years at $2,700 per annum, but this was not satisfactory to Mrs. Rumbough, and Mr. Rumbough insisted that it.be changed to ten years, with a

renewal clause for five years, at $2,800 rent for each year, payable monthly, and stated that then Mrs. Rumbough would sign the lease. The change was made, and when the lease was taken to her she did sign it willingly, and expressed the opinion of it which we have above stated. The terms of the lease informed her, or was notice to her, that plaintiffs had acted for her in procuring it, as it was brought to her by Mr. Sumner and Mr. Wearn, acting for the plaintiff. She ratified what had been done, if she did not in the beginning authorize her husband to act for her, though the evidence tends strongly to show that she had given full authority to her husband to lease the property for her and that he was acting under that authority. There is evidence also from which the jury could well infer that she received the first installment of rent, from which the commission of 5 per cent had been deducted, and made no complaint on that account. "Except in the cases wherein the common law requires authority under seal, or some statute requires authority in writing, no particular method of authorizing is necessary; and, except in those cases, no particular method of proving the authority need be resorted to. Any competent witness having knowledge of the facts may be called, or any lawful mode of proof be adopted. The evidence offered need not be of the same nature as the act of authorization except in the cases referred to in the preceding sections. Thus the authority may have been conferred by express word of mouth and be proved by evidence of recognition; it may have been conferred informally but proved by evidence of an express admission. The existence of agency is a fact, and, like other facts, may be proved by any evidence traceable to the alleged principal and having a legal tendency to establish it. Informal writings of the alleged principal, his letters, telegrams, book entries, and the like are clearly admissible. But it need not be proved by written instruments (except in the cases already mentioned) or by express or formal oral language. The agency may be shown by conduct, by the relations and situation of the parties, by acts and declarations, by matters of omission as well as of commission, and, generally, by any fact or circumstance with which the alleged principal can be connected and having a legitimate tendency to establish that the person in question was his agent for the performance of the act in controversy." 1 Mechem on Agency, secs. 260 and 261, pp. 185 and 186. "Agency, like any other controvertible fact, may be proved by circumstances. It may be inferred from previous employment in similar acts or transactions, or from acts of such nature and so continuous as to furnish a reasonable basis of inference that they were known to the principal, and that he would not have allowed the agent so to act unless authorized. In such cases the acts or transactions are admissible to prove agency.

But in order to be relevant the alleged principal must in some way directly or indirectly be connected with the circumstances. The agent must have assumed to represent the principal, and to have performed the acts in his name and on his behalf." *Hill v. Helton,* 80 Ala., 528. Mr. Mechem further says that for the purpose of proving agency a wide range may often be properly given to the testimony, provided that which is offered has a real probative tendency toward the main question in issue, or, in other words, legitimately tends to prove the fact of agency so that the jury may reasonably deduce from it that such agency existed. 2 Mechem, sec. 261, p. 187.

We have not stated all the facts or circumstances which tend to show that Mr. Rumbough was acting as agent of his wife with her knowledge and consent, as it is only necessary to decide there was some evidence which justified the submission of that question to the jury. If Mr. Rumbough was the agent of his wife to lease the property, what he did in furtherance of the business and within the scope of his employment is binding upon her. The rule is thus stated in *Latham v. Field,* 163 N. C., 356, 360: "A principal is bound by the acts of his agent within the authority he has actually given him, which includes not only the precise act which he expressly authorizes him to do, but also whatever belongs to the doing of it, or is necessary to its performance. Beyond that, he is liable for the acts of the agent within the appearance of authority which the principal himself knowingly permits the agent to assume, or which he holds the agent out to the public as possessing." See, also, *Daniel v. R. R., supra;* 2 Mechem on Agency (2 Ed.), sec. 1709.

The defendant contends that B. H. Sumner, who took part in securing the lease, did not have the license to do such business required by Public Laws 1913, ch. 201, sec. 32, and that for this reason the plaintiffs cannot recover. But Sumner was not acting for himself in the transaction, nor was he a partner in the plaintiff firm. He was merely an employee working for the realty company, and received his compensation from the company and not from the Rumboughs by way of commissions due to him by them on the rents for any services he rendered. He was not dealing with them in his own behalf, but simply as the representative of another. The transaction was altogether between the realty company and the Rumboughs, though in conducting it to a conclusion the company was assisted by Sumner as their employee, and at the time it was consummated by the signing of the lease one of the firm was present. Under such facts and circumstances it has been held that the agent is not subject to the tax, but is protected by the license of his principal. *Myderdock v. Com.,* 26 Grattan (Va.), 988. But this statute provides that the principal *or*

the agent shall pay the tax for the privilege of doing the particular business.

We do not think that Sumner, so far as the evidence in this record shows, was subject to the provisions of Public Laws 1913, ch. 201, sec. 32, as he was neither collecting rent nor acting as agent in buying or selling real estate, even if he could be considered as a principal, or as an agent where the principal had no license for the transaction. It was a misjoinder to make him a party as plaintiff, and the court very properly dismissed him from the action. He had no cause of action, either jointly or severally, against the Rumboughs, and could look only to the realty company for his pay. He was not interested in the lease, or the commissions, so as to have any claim against the lessees. The contract was between the plaintiff realty company and Mrs. Rumbough, who owned the property, which was the subject of the lease, and the cause of action for the commissions or for any compensation for securing the lease and collecting the rent belonged solely to the realty company. In the present aspect of the case this is not an action by a person without a license, or one who has not paid the required tax, to recover commissions on a real estate transaction, as Sumner is not now a plaintiff, but it is an action, as at present constituted, by plaintiffs, who have the tax-paid privilege, under the law, to do the thing for which they are seeking to recover commissions, as compensation for the service so rendered.

In the view we take of the case it becomes unnecessary to consider the question whether the fact that Sumner had no license, or had not paid the tax, would so far vitiate the transaction as to preclude a recovery of anything.

We have considered the objections to testimony and find no error in the rulings of the court with respect to them. There was evidence of Rumbough's agency for his wife, and his acts within the scope of his authority are binding upon her.

The court submitted the proper issues. They embraced all controverted questions.

We find no error in the record.

No error.