INVESTMENT PROPERTIES OF ASHEVILLE, INC. AND BAXTER H. TAYLOR v. MARTHA NORBURN MEAD ALLEN

No. 94

(Filed 10 May 1972)

1. Rules of Civil Procedure § 50— motion for directed verdict — consideration of evidence

On a motion for a directed verdict by the defendant, the court must consider the evidence in the light most favorable to the plaintiff, and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff.

2. Principal and Agent § 4— agency — sufficiency of evidence

Plaintiffs' evidence was sufficient to be submitted to the jury on the question of whether defendant's brother was the agent of defendant in terminating a lease of land owned by defendant and in promising to pay for the grading work performed on the land if the lease were terminated before a certain date, where it tended to show that (1) defendant knew her brother was negotiating to lease her property to the corporate plaintiff for the construction of a motel, (2) as a result of those negotiations defendant signed a lease because she trusted her brother to do what was best for her, (3) defendant was later advised that "this was not a good lease," (4) defendant's brother and the corporate plaintiff's vice president then entered into lengthy negotiations attempting to agree on a new lease, (5) during such negotiations the grading work continued, and defendant was kept advised by her brother concerning this grading and on occasions was taken by him to inspect this work, which substantially improved her land, (6) no new lease was agreed upon with corporate plaintiff and the lease signed by defendant was terminated, (7) defendant thereafter signed a lease of the land to another party which was negotiated by her brother, and (8) defendant recognized her brother as her agent at all times during such transactions and fully ratified his acts done in her behalf.

3. Frauds, Statute of § 11— oral rescission of lease

A lease required by the Statute of Frauds to be in writing may be rescinded orally by the mutual assent of both parties.

4. Principal and Agent §§ 4, 6— proof of agency — ratification

The jury could reasonably find that defendant's brother was acting for defendant when he promised to pay for grading work on defendant's land in the event a new lease of the land to plaintiff was not agreed upon, and that in any event defendant subsequently ratified her brother's promise to pay, where there was evidence tending to show that defendant's brother made such promise to prevent the removal of grading equipment from defendant's land and to assure that a motel would be constructed on the land, that defendant's land was substantially benefited by the work done, and that defendant was advised concerning the grading work and actually went on the property to inspect the work.

Investment Properties v. Allen

5. **Frauds, Statute of § 11; Landlord and Tenant § 19— claim for rent and improvements — oral rescission of lease**

The lessor has no claim for rental payments or the value of improvements promised under a lease if the lease was orally rescinded prior to the date the first rental payment was due.

6. **Rules of Civil Procedure § 50— motion for judgment n.o.v. — consideration of evidence**

When passing on a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-movant.

7. **Rules of Civil Procedure § 50— denial of directed verdict — judgment n.o.v.**

Denial of a motion for a directed verdict is not a bar to a motion for judgment n.o.v.

8. **Rules of Civil Procedure § 50— denial of judgment n.o.v.**

The trial court correctly denied defendant's motion for judgment n.o.v. where the evidence viewed in the light most favorable to plaintiffs was sufficient to sustain the verdict.

9. **Appeal and Error § 45— abandonment of exceptions**

An exception not brought forward and discussed as an assignment of error is deemed abandoned. Supreme Court Rule 28.

10. **Principal and Agent § 4— proof of agency — similar transactions**

Evidence that defendant's brother negotiated a lease of defendant's land to another corporation after the lease to plaintiff was allegedly rescinded, and that defendant took no part in the negotiations but merely signed the lease when it was presented to her, *held* competent on the question of the agency of defendant's brother in various transactions concerning the lease with plaintiff.

11. **Evidence § 33; Principal and Agent § 4— hearsay — purpose of testimony**

Defendant's testimony on adverse examination that "They told me it was not a good lease" was not incompetent as hearsay, notwithstanding the identity of "they" was never revealed, where the testimony was not offered to prove or disprove the quality of the lease itself but was offered to show that defendant had been advised or put on notice that the lease might be deficient in some respects.

12. **Principal and Agent § 4— proof of agency — negotiations with third party — responsiveness of witness' answer**

Where defendant was asked by plaintiff on adverse examination whether her alleged agent was reporting to her regularly on the status of negotiations with a third party, defendant's answer, "He would come and tell me something about it and I trusted him to go ahead and do what he thought best, and I don't know how much went on," *held* responsive to the question and relevant on the issue of agency.

**13. Appeal and Error § 31— assignment of error to the charge**

An assignment of error to the charge on the ground that the court gave an erroneous instruction on a particular aspect should not only quote the portion of the charge to which the appellant objects but should also point out the alleged error.

**14. Appeal and Error § 31— broadside assignment of error to the charge**

An assignment of error to the charge as a whole that specifies no portion of the charge which appellant deems erroneous and no additional instructions which he deems to be required is broadside and ineffective to bring up any portion of the charge for review.

**15. Contracts § 29; Interest § 1— contract action — interest on judgment — time of breach**

In an action on a contract to recover the actual cost of grading and improvements performed on defendant's property, the trial court did not err in allowing plaintiffs to recover interest upon the verdict in their favor from the date plaintiffs forwarded to defendant a statement itemizing the work performed and the actual cost thereof, where the amount of damages, although not ascertainable from the contract itself, could easily be computed from the uncontradicted testimony of the individual plaintiff.

Justice SHARP dissenting.

Chief Justice BOBBITT and Justice LAKE join in the dissenting opinion.

APPEAL by defendant from the decision of the Court of Appeals reported in 13 N.C. App. 406, 185 S.E. 2d 711 (1972), which found no error in the trial before *Martin, J.,* at the 1 March 1971 Civil Session of BUNCOMBE Superior Court.

Plaintiffs brought this action to recover $19,456.88, the cost of grading, excavation and land preparation of certain real property belonging to defendant, Martha Norburn Mead Allen, in Buncombe County, North Carolina.

In May 1965 defendant was the owner of a tract of land known as the "Old Norburn Home Place," containing approximately 16 acres located at the intersection of U. S. Highway 19-23 and old Highway 10 in Buncombe County, North Carolina. In early 1965 Dr. Logan Robertson, Vice President of Investment Properties of Asheville, Inc., a real estate holding company, came to Dr. Charles S. Norburn, brother of defendant, and asked him to get his sister to lease this property to his Company for the purpose of constructing a motel thereon. Norburn discussed this with his sister, and on 10 May 1965 a written lease was executed between defendant Allen and

Investment Properties of Asheville, Inc. This lease provided in part that the lessee would pay to lessor monthly rental installments of $1,000 beginning when the lessee began to receive income from the property or on 1 June 1966, whichever was sooner. It further provided that in the event of re-entry by the lessor for default in rental installments, should the improvements then on the property amount to less than $60,000, the lessee would pay to the lessor the difference in cash. The lease also provided that the lessee "assume entire responsibility for property, to list it for taxes and pay the same when due, and also pay all assessments, . . . and shall have complete and unrestricted control in grading, reshaping and development of this property."

Robertson testified that after the execution of the lease he discovered that he would not be able to obtain financing for the construction of a motel based upon this lease, and requested that Norburn get his sister to agree to a new lease wherein she would subordinate her interest to the lien of the person or institution lending money for the construction of a motel on the property. Defendant refused to so subordinate her interest. Thereafter, various attempts were made to change the lease agreement of 10 May 1965 so that plaintiffs could finance the construction of a motel. No changes were made, and no other lease for this property was ever executed between plaintiffs and defendant.

Robertson further testified that in the month of July 1965 he and Norburn discussed the problem about the lease; that Norburn then stated that this lease was cancelled, and as a result Robertson returned to his office and made this notation on the lease: "Never registered 'cause we felt that both parties knew it was invalid. July 1965—CSN informed me that lease was cancelled." Norburn denied that he made such statement.

Baxter H. Taylor, one of the plaintiffs, was the President of Asheville Contracting Company and was a partner with Investment Properties of Asheville, Inc., in connection with the 10 May 1965 lease from defendant. Prior to May 1965 Asheville Contracting Company obtained a contract for the construction of a section of Highway I-40 which passed over railroad tracks and Highway U. S. 19-23 near defendant's property. It was necessary to build a fill for this overpass. Taylor testified that he had a conversation with Robertson with reference to Ashe-

ville Contracting Company's filling and leveling the Norburn property and putting in the drainage facilities necessary for the construction of a motel. Asheville Contracting Company agreed to do the work and began grading on 5 June 1965. The major grading work was completed within two weeks, although some seeding was done on the banks and some leveling done at a later date.

Before the work on the property was completed, Robertson told Norburn that if defendant Allen did not sign another lease so that financing could be obtained, he was afraid the grading machinery belonging to Asheville Contracting Company would be removed from the property and that the Holiday Inn would be built in Hendersonville rather than on the Allen land. Norburn assured Robertson that he thought he could persuade his sister to sign such lease, and stated that if she did not he would pay for the grading. Norburn then wrote and signed this statement:

"Asheville, N. C.
June 17, 1965

"To
"Dr. Logan Robertson:

"This is to certify that I will stand personally liable as stated below for the Conduit grading and necessary expenses (at actual cost) for the land preparation of the Acton property now owned by Martha Mead Allen, in case the lease is not continued after June 1, 1966.

"I promise to pay in cash for this or else deed to you the 734 acre tract in Ashe County which is and will be free and clear.

Charles S. Norburn"

On 29 September 1965 Robertson wrote defendant stating in part:

"I am sending you a new lease—which we think is a good one and our final offer for your property. . . . I want to say also that at first I had no idea that the grading would be delayed. Through necessity elsewhere the machines were withdrawn, but will now be returned. . . . You may rest assured that the place will be graded properly to

carry the large motel we plan to build upon it. Those who hold the Holiday Inn franchise say they simply cannot afford to build such an expensive complex if the lease is for a shorter time than fifty (50) years."

Neither the defendant nor Norburn answered this letter or ever insisted that the paper writing of 10 May 1965 was still in effect. No demand for payment of any rent was made on the plaintiffs by defendant Allen or by Norburn under the lease dated 10 May 1965, and none was paid. Defendant, through another brother Dr. Russell Norburn, contrary to the terms of said lease, listed the property for taxes on 17 February 1966.

On 12 December 1966 Robertson, in the presence of and at the request of Norburn, wrote on the lease of 10 May 1965 as follows:

"December 12, 1966

"Lease forfeited and returned this date. Settlement in accordance with the provisions of the lease and its associated papers is to follow.

Investment Properties of Asheville, Inc.
by Logan T. Robertson
Vice President"

On 13 October 1967 the land in question was leased by defendant to West Side Motel Company, Inc., and a Holiday Inn was built thereon.

Plaintiffs allege that at all times Norburn was acting as agent for his sister in negotiating and terminating the 10 May 1965 lease and in promising to pay for the grading. Plaintiffs further allege that after the land preparation was completed by Asheville Contracting Company, demands for payment were refused by defendant. Whereupon, plaintiffs paid Asheville Contracting Company by giving that Company a noninterest-bearing note payable on demand for $19,456.88, and defendant is now indebted to the plaintiffs in that amount.

Norburn testified that he received no compensation from Robertson or from his sister, defendant, and that he was not an agent for his sister; rather that he was acting as agent for his good friend Robertson when he approached his sister about the lease. Defendant Allen testified that Norburn was not her agent.

In a separate action (see *Investment Properties, Inc. v. Norburn,* 281 N.C. 191, 188 S.E. 2d 342 (1972)), plaintiffs sought to recover from Norburn $19,456.88 on his guaranty contract. By consent the two cases were consolidated for trial.

Upon issues submitted in this case, the jury found that Norburn was the agent of defendant in connection with the alleged termination of the lease, that the lease was terminated on or before 1 June 1966, that Norburn was the agent of defendant in contracting for the land preparation, that defendant through her agent Norburn agreed to pay the actual cost of the land preparation, and that plaintiffs should recover $19,456.88 from defendant.

From judgment entered on the verdict, defendant appealed to the Court of Appeals. That court, with Judge Vaughn dissenting, found no error. Defendant appeals to the Supreme Court as of right under G.S. 7A-30(2).

*Williams, Morris & Golding by James F. Blue, III, for defendant appellant.*

*Bennett, Kelly & Long by Harold K. Bennett for plaintiff appellees.*

MOORE, Justice.

Defendant Allen first contends the trial court erred in denying her motion for a directed verdict made at the close of all the evidence.

[1]  On a motion for a directed verdict by the defendant, the court must consider the evidence in the light most favorable to the plaintiff, and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiff. G.S. 1A-1, Rule 50(a), Rules of Civil Procedure; *Adler v. Insurance Co.,* 280 N.C. 146, 185 S.E. 2d 144 (1971); *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971); 5A Moore's Federal Practice § 50.02[1] (2d Ed. 1969).

The motion presents substantially the same question for sufficiency as did a motion for an involuntary nonsuit under former G.S. 1-183. See Comment by Phillips in 1970 Pocket Part to McIntosh, North Carolina Practice and Procedure § 1488.15 (2d Ed. 1969). As to the rules which governed the motion for

an involuntary nonsuit under G.S. 1-183, see *Bowen v. Gardner*, 275 N.C. 363, 168 S.E. 2d 47 (1969).

In support of her motion for a directed verdict, defendant insists that there was no evidence of agency between defendant and Norburn, that the rescission of the written lease contract was not in writing and was improper because of the Statute of Frauds, and that there was no evidence that defendant Allen promised to pay for the grading work or that her alleged agent Norburn made such promise for her.

Taken in the light most favorable to plaintiffs, the evidence tends to show that defendant was quite sick during the spring and summer of 1965; that she was over 75 years of age, separated from her husband and in the process of obtaining a divorce; and that she was aware of the negotiations between Norburn and Robertson leading to the lease of 10 May 1965, which she signed and which she later learned was not a good lease. Defendant felt that the land in question was partly owned by her brothers although their names were not on anything, and that she and her brothers had obligations to each other. She also felt that "Norburn had business and good judgment," and although she did not know much about the negotiations between Norburn and Robertson, she signed the lease of 10 May 1965 because she trusted Norburn to do what he thought was best. On one or two occasions Norburn took her to view the grading on the property and talked to her about the status of the grading work, filling, and excavation. The lease which defendant finally signed with the West Side Motel Company, Inc., was also negotiated and approved by Norburn. This lease to West Side Motel Company, Inc., contained various provisions suggested by Norburn, one of which was, "Lessee acknowledges that certain grading, excavating, and laying pipes and building manholes have heretofore been done on the leased premises," with a further provision that should it ultimately be determined that defendant or Norburn was responsible for this grading, any such expense for which they might be liable would be paid by the West Side Motel Company, Inc.

In discussing the power of an agent to bind its principal, Justice Bobbitt (now Chief Justice) in *Research Corporation v. Hardware Co.*, 263 N.C. 718, 721, 140 S.E. 2d 416, 418-19 (1965), states:

"Our decisions adopt and quote the following statement from Tiffany on Agency, pp. 180-181, *viz:* 'The principal is liable upon a contract duly made by his agent with a third person—(1) When the agent acts within the scope of his actual authority; (2) When the contract, although unauthorized, has been ratified; (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. "Apparent authority," as the term is used in the foregoing section, includes authority to do whatever is usual and necessary to carry into effect the principal power conferred upon the agent and to transact the business which he is employed to transact; and the principal cannot restrict his liability for acts of his agent within the scope of his apparent authority by limitations thereon of which the person dealing with the agent has not notice. The principal may be estopped to deny that a person is his agent, or that his agent has acted within the scope of his authority.' *Wynn v. Grant,* 166 N.C. 39, 47, 81 S.E. 949; *Brimmer v. Brimmer,* 174 N.C. 435, 439-440, 93 S.E. 984; *Jones v. Bank,* 214 N.C. 794, 797, 1 S.E. 2d 135."

[2] Here, the evidence favorable to the plaintiffs tends to show: (1) Defendant knew Norburn was negotiating with Robertson to lease her property to the corporate plaintiff for the construction of a Holiday Inn; (2) as a result of these negotiations, the lease of 10 May 1965 was signed by defendant because she trusted her brother to do what was best for her; (3) that the defendant was later advised that this "was not a good lease"; (4) that Norburn and Robertson then entered into lengthy negotiations attempting to agree upon a new lease; (5) that while these negotiations were in progress, the grading of the property proceeded and defendant was kept advised by Norburn concerning this grading, and on occasions she was taken by him to inspect this work, which had substantially improved her land; (6) that no new lease was agreed upon with Robertson; (7) that the lease of 10 May 1965 was terminated before 1 June 1966, and that Norburn, acting for defendant, negotiated a lease with West Side Motel Company, Inc., for defendant's property, which defendant signed, and (8) that defendant recognized Norburn as her agent at all times during these transactions and fully ratified his acts done in her behalf. This evidence was sufficient to be submitted to the jury and to over-

come defendant's motion for a directed verdict. *Kelly v. Harvester Co., supra; Equipment Co. v. Anders,* 265 N.C. 393, 144 S.E. 2d 252 (1965).

There was other evidence from which the jury could have found to the contrary, but the resolution of the factual issues was properly left to the jury. *Sneed v. Lions Club,* 273 N.C. 98, 159 S.E. 2d 770 (1968).

[3] In further support of her motion for a directed verdict, defendant contends that the alleged rescission of the lease of 10 May 1965 was not in writing and was improper because of the Statute of Frauds. This contention is without merit. A lease which is required by the Statute of Frauds to be in writing may be rescinded orally by the mutual assent of both parties. *Scott v. Jordan,* 235 N.C. 244, 69 S.E. 2d 557 (1952) ; *Bell v. Brown,* 227 N.C. 319, 42 S.E. 2d 92 (1947).

[4] Defendant also insists there was no evidence that defendant personally or through Norburn promised to pay for the grading work. The evidence discloses that Norburn agreed to pay for this work in the event a new lease was not agreed upon; that he did this to prevent the Asheville Contracting Company from removing its equipment, and also to assure that a Holiday Inn would be constructed on this property. Although no benefit accrued to Norburn, the defendant's property was substantially benefited by the work done. The evidence further discloses that defendant was advised concerning the grading and actually went on the property to inspect the work. From this evidence the jury could reasonably find that Norburn was acting for defendant when he promised to pay for this work, and that in any event defendant subsequently ratified his promise to pay. See *White v. Disher,* 232 N.C. 260, 59 S.E. 2d 798 (1950). This evidence was sufficient for submission to the jury and to overcome defendant's motion for a directed verdict. *Kelly v. Harvester Co., supra.*

[5] Defendant also assigns as error the failure of the trial court to direct a verdict for her on the counterclaim for rental payments due under the 10 May 1965 lease and for the difference between the value of the improvements promised and the value of improvements actually placed upon her property. This assignment is without merit. There was sufficient evidence from which the jury could find that there was no default under the

lease, but that the lease was orally rescinded prior to the date the first rental payments were due. If so rescinded, defendant had no claim for rent or improvements. *Scott v. Jordan, supra; Bixler v. Britton,* 192 N.C. 199, 134 S.E. 488 (1926). Consequently, the trial court correctly denied defendant's motion and submitted issues to the jury. *Adler v. Insurance Co., supra.*

Defendant next contends that the trial court erred in refusing defendant's motion for judgment notwithstanding the verdict, under Rule 50(b) of the New Rules of Civil Procedure. This rule provides in effect that "when a motion for directed verdict is denied, and the jury returns a verdict for the non-movant, the movant may make a motion for judgment in his favor notwithstanding the verdict. The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict and, as in the case of the latter motion, is cautiously and sparingly granted. It permits the judge to consider the sufficiency of the evidence after the jury has returned a verdict." Sizemore, *General Scope and Philosophy of the New Rules,* 5 Wake Forest Intramural Law Review 1, 41 (1969).

[6, 7] When passing on a motion for judgment n.o.v., the court must view the evidence in the light most favorable to the non-movant. *New Mexico Saving & Loan Ass'n v. U. S. Fidelity & Guaranty Co.,* 454 F. 2d 328 (10th Cir. 1972) ; *Hannigan v. Sears, Roebuck & Co.,* 410 F. 2d 285 (7th Cir. 1969) ; *Warner v. Billups Eastern Petroleum Co.,* 406 F. 2d 1058 (4th Cir. 1969). The standards are the same as those for granting a directed verdict. *Juhnke v. EIG Corp.,* 444 F. 2d 1323 (9th Cir. 1971). However, denial of a motion for a directed verdict is not a bar to a motion for judgment n.o.v. *Moore v. Capital Transit Co.,* 226 F. 2d 57 (D.C. Cir. 1955), cert. denied 350 U.S. 966, 100 L.Ed. 839, 76 S.Ct. 434 (1956). For a good explanation of the purpose of the rule, see *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 85 L.Ed. 147, 61 S.Ct. 189 (1940) ; Comment to G.S. 1A-1, Rule 50, N. C. Rules of Civil Procedure.

[8] In the instant case, at the close of all the evidence defendant made a motion for a directed verdict, which was denied. After the jury returned its verdict, defendant then made a motion for judgment n.o.v. under Rule 50(b). The trial judge correctly denied this motion for the same reasons that he denied the

motion for a directed verdict—that is, the evidence viewed in the light most favorable to plaintiffs was sufficient to sustain the verdict.

[9] Defendant also made a motion for a new trial under Rule 59. This motion was denied by the court, and the defendant excepted to this ruling. However, this exception was not brought forward and discussed as an assignment of error and is therefore deemed abandoned. Rule 28 of the Rules of Practice in the Supreme Court, 254 N.C. 810 (1961); *Dinkins v. Booe,* 252 N.C. 731, 114 S.E. 2d 272 (1960).

[10] Defendant further contends that the trial judge erred in admitting testimony concerning a subsequent lease from defendant to West Side Motel Company, Inc. This lease involved the same tract of land and was signed by defendant on 13 October 1967. Both defendant and Norburn testified concerning this lease. Norburn testified that he dictated to West Side Motel Company, Inc., and its attorneys the provisions which he wished to be included in the lease, that defendant Allen had no part in negotiating the lease, and that she only signed it when it was presented to her. Defendant Allen testified that she had no contact with the representatives of West Side Motel Company, Inc., until she met them in the office of the attorney when she signed the lease. This testimony by defendant Allen and Norburn was competent on the question of the agency of Norburn, as it tended to show a course of business dealings between defendant and Norburn in similar transactions. *Colyer v. Hotel Co.,* 216 N.C. 228, 4 S.E. 2d 436 (1939). " . . . (P) roof that the principal permitted the agent to perform similar acts and transactions with other persons has always been accepted to establish the existence of an agency. . . . " 3 Am. Jur. 2d, Agency § 351. See also 3 Am. Jur. 2d, Agency § 352, which states: " . . . (E) vidence of an agent's authority to bind his principal is frequently found in the fact that the alleged principal acquiesced in, recognized, or adopted similar acts done on other occasions by the assumed agent." See *Realty Co. v. Rumbough,* 172 N.C. 741, 90 S.E. 931 (1916); *Gilbraith v. Lineberger,* 69 N.C. 145 (1873).

[11] Defendant next contends that the court erred in allowing the plaintiffs' attorney to read to the jury two portions of the adverse examination of defendant Allen. The first portion of defendant's statement related to the 10 May 1965 lease and was

as follows: "They told me it was not a good lease." Defendant contends that this was hearsay as the identity of "they" was never revealed. This argument is without merit. The purpose of the question was not to prove or disprove the quality of the lease itself, but was to show that defendant had been advised or put on notice that the lease might be deficient in some respects. *Wilson v. Indemnity Corp.*, 272 N.C. 183, 158 S.E. 2d 1 (1967); Stansbury, N. C. Evidence § 141, p. 346 (2d Ed. 1969).

[12] The second portion of the statement read to the jury consisted of the following question asked by plaintiffs' attorney and answered by defendant:

"Q. Wasn't he [Norburn] reporting back to you regularly on the status of these negotiations [with West Side Motel Company, Inc.]?

"A. He would come and tell me something about it and I trusted him to go ahead and do what he thought best, and I don't know how much went on, I just don't know."

Defendant contends the answer was not responsive to the question and should have been stricken. As stated in III Wigmore, Evidence § 785 (Chadbourne rev. 1970):

"Where the witness, either in a deposition or on the stand, goes beyond the scope of the question, and makes an answer *not responsive,* there is nothing 'per se' wrong. If the answer contains irrelevant facts, they may be struck out, and the jury directed to ignore them. If it furnishes relevant facts, then they are none the less admissible merely because they were not specifically asked for."

The answer in this case was in fact responsive and relevant to the question of the existence of agency. See *State v. Little*, 278 N.C. 484, 180 S.E. 2d 17 (1971); *In re Will of Tatum*, 233 N.C. 723, 65 S.E. 2d 351 (1951).

[13] Defendant's assignments of error Nos. 323, 324, 325, 326, 327, 328, 329, and 330 relate to alleged errors in the charge. In each assignment the defendant merely says: "The court erred in instructing the jury, as set forth in EXCEPTION No.[giving exception number]," and then quotes a portion of the charge. The assignments do not set out the defendant's contentions as to what the court should have charged or the particular matters

which defendant asserts were erroneous or omitted. An assignment of error to the charge on the ground that the court gave an erroneous instruction on a particular aspect should not only quote the portion of the charge to which the defendant objects but should also point out the alleged error. *State v. Boyd,* 278 N.C. 682, 180 S.E. 2d 794 (1971) ; *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793 (1970) ; *State v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970) ; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967) ; *State v. Wilson,* 263 N.C. 533, 139 S.E. 2d 736 (1965) ; *Pratt v. Bishop,* 257 N.C. 486, 126 S.E. 2d 597 (1962) ; 1 Strong, N. C. Index 2d, Appeal and Error § 31, p. 167; 3 Strong, N. C. Index 2d, Criminal Law § 163, p. 118.

[14] Assignment of error No. 331 based on exception No. 331, entered at the end of the charge, states:

"The court erred in failing to state in a plain and concise manner the evidence given in the case to the extent necessary to explain the application of the law thereto and in failing to declare and explain the law arising on the evidence given in the case, as set forth in EXCEPTION No. 331 (R p 220), as required by Rule 51 of the Rules of Civil Procedure, in the following particulars:

"(a) The court failed to explain the law relating to the meaning of agency and the agency relationship;

"(b) The court failed to explain the law relating to the scope of an agent's authority to act for his principal and to sufficiently define authority and scope of authority of an agent within the context of this case;

"(c) The court failed to fully and correctly explain apparent authority of an agent to act for his principal and to define the meaning of apparent authority within the context of this case;

"(d) The court failed to fully and correctly explain the meaning of ratification by the principal and to define that term within the context of this case;

"(e) The court failed to explain the law regarding the abandonment or termination of a written lease agreement;

"(f) The court failed to explain the law relating to the requirements for an agent to make an agree-

ment for and on behalf of his principal, in order to bind the principal upon that agreement.

## "ASSIGNMENT OF ERROR NO. 331."

This assignment of error is to the charge as a whole. It specifies no portion of the charge which defendant deemed erroneous and sets out no additional instructions which she deemed to be required. This is a broadside assignment and is ineffective to bring up any portion of the charge for review by this Court. *State v. Mason,* 279 N.C. 435, 183 S.E. 2d 661 (1971) ; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Kirby, supra; State v. Wilson, supra.*

Even though the assignments of error to the charge do not comply with the rules stated above, we have examined the charge and find it free from error.

[15]   Defendant finally contends that the court erred in allowing the plaintiffs to recover interest upon the verdict from 25 November 1966. The plaintiffs' action was on a contract to recover the actual cost for the grading and improvements performed by the Asheville Contracting Company on the defendant's property. The amount was not known at the time the agreement was entered into, but was ascertained upon the completion of the work. On 25 November 1966 plaintiffs forwarded a statement itemizing the work performed and the actual cost thereof. Defendant refused to pay.

In *General Metals v. Manufacturing Co.,* 259 N.C. 709, 713, 131 S.E. 2d 360, 363 (1963), with reference to interest on a judgment for breach of contract, it is stated:

"The later cases following the enactment of G.S. 24-5 seem to have established this rule: When the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach. *Construction Co. v. Crain & Denbo,* 256 N.C. 110, 123 S.E. 2d 590; *Thomas v. Realty Co.,* 195 N.C. 591, 143 S.E. 2d 144; *Perry v. Norton,* 182 N.C. 585, 109 S.E. 641; *Bond v. Cotton Mills,* 166 N.C. 20, 81 S.E. 936."

See also *Vancouver Plywood Co. v. Godley Construction Co.,* 393 F. 2d 295, 299 (4th Cir. 1968).

Although in this case the amount of damages was not ascertained from the contract itself, the same could be easily computed from the uncontradicted testimony of the plaintiff Taylor. The court's action in allowing interest from 25 November 1966 finds support in the record and in the cases cited in *General Metals v. Manufacturing Co., supra.* This assignment is overruled.

The record in this case contains 334 assignments of error based on 334 exceptions. No effort was made to group the exceptions. *Williams v. Denning,* 260 N.C. 539, 133 S.E. 2d 150 (1963) ; *Daniel v. Lumber Co.,* 254 N.C. 504, 119 S.E. 2d 397 (1961). The assignments of error alone cover 93 pages of the record. Obviously, a separate discussion of each would prolong this opinion beyond reasonable bounds. *State v. Porth, supra; State v. Lea,* 203 N.C. 13, 164 S.E. 737 (1932). A statement made by Justice Higgins regarding the record in *Morgan v. Bell Bakeries, Inc.,* 246 N.C. 429, 98 S.E. 2d 464 (1957), is pertinent:

" . . . The careful review of this record has been difficult and time consuming. More than 200 exceptions have been examined. The assignments of error alone cover 68 pages of the record. If there is grain of merit in this appeal it is covered up in the chaff."

Suffice it to say that each assignment has been carefully examined. The evidence was sharply conflicting in many respects. These conflicts have been resolved by the jury in favor of the plaintiffs in a trial free from prejudicial error.

The decision of the Court of Appeals is affirmed.

Affirmed.

Justice SHARP dissenting.

In my view, defendant's motion for a directed verdict should have been allowed, for (1) the evidence discloses that Norburn lacked authority to bind his sister, defendant Allen, to pay the cost of the grading in suit, and (2) in that matter plaintiffs did not deal with him as her agent. The undisputed evidence is that they relied upon Norburn's individual, specific promise "to pay in cash for this."

After plaintiffs found out that they could not secure a construction loan to build the motel they had planned to erect on the property they had leased from Mrs. Allen on 10 May 1965 until she subordinated her rights under the lease to those of the lender, they attempted to secure a substitute lease which would accomplish this. Dr. Logan Robertson came to Dr. Norburn's home "day after day, with one propositon after another, trying to get [him] to get Martha to give him another lease that would subordinate her property." At least twenty leases were prepared, but defendant never executed one. Plaintiffs rightly apprehended that a substitute lease might never be executed, and Dr. Robertson told Norburn that plaintiffs "would have to have some sort of a guarantee from him or from Martha to pay the cost of it [the continuation of the grading which had been started on defendant's property]." Whereupon, on 17 June 1965 Norburn executed the promise to pay which is set out in full in the majority opinion.

The record contains no evidence that defendant ever knew Norburn had executed a contract to "stand personally liable" for the actual cost of grading defendant's property "in case the lease is not continued after June 1, 1966." In it he did not purport to be acting as defendant's agent; the promise to pay was his individual act and bound him only. The instrument itself negates any promise to pay on defendant's part, and plaintiffs' requirement that either she *or* Norburn execute a written promise of payment demonstrates their knowledge of his lack of authority to bind his sister, the owner of the land on which the grading was being done.

Although Dr. Robertson testified that plaintiffs and Norburn had regarded the May 10th lease as canceled in the summer of 1965, there is no evidence that defendant herself so regarded it. It was not until 12 December 1966 that Dr. Robertson marked it "forfeited and returned." That lease had obligated plaintiffs to pay for all grading which was done on defendant's land. No person representing plaintiffs ever talked with defendant herself about rescinding the case and substituting therefor a new one. Plaintiffs, however, knew they had been unable to negotiate a new lease with her through Norburn and that they expended further sums on grading at their own risk. After obtaining Norburn's promise to pay in cash for the continued grading, or to deed Dr. Robertson 734 acres of land, in the

event the lease was "not continued," plaintiffs expended the sum of $19,456.88.

Defendant never executed a substitute lease to plaintiffs. For reasons satisfactory to herself she apparently desired no further dealings with them. Later, however, Norburn negotiated a lease with a tenant acceptable to her, West Side Motel Company. That company agreed to pay for the grading plaintiffs had done in the event either defendant or Norburn should be liable for it. West Side's agreement may or may not render academic the question of defendant's liability, but, be that as it may, I cannot agree that she has any liability whatever to plaintiffs. Conceding that the grading was necessary if a motel was to be constructed on defendant's property and that she has, or will, profit from the work, it was Dr. Norburn who agreed to pay for it. Further, it was his promise to pay upon which plaintiffs acted, and they have sued him upon it too. *See Investment Properties v. Norburn, post,* decided this day. The West Side Motel Company has also agreed to pay if either Norburn or defendant should be held liable for the grading. Defendant, however, never agreed to pay plaintiffs for the grading under any circumstances, and it is a fair inference from the evidence that she did not want it done. My vote is to reverse.

Chief Justice BOBBITT and Justice LAKE join in this dissenting opinion.