DeHart v. R/S Financial Corp.

No error.

Judges HEDRICK and BRASWELL concur.

RESSIE DeHART v. R/S FINANCIAL CORPORATION

No. 8330DC171

(Filed 21 February 1984)

**Usury § 1.2— usurious loan supported by evidence**

In an action for usury, the trial court improperly granted defendant's motion for directed verdict where plaintiff's evidence indicated that plaintiff signed a promissory note in the amount of $9,645.12, but nothing supported that sum as being the base amount of the loan. It appeared from the evidence that interest was computed in some manner on $5,600.00, the only sum testified as being the amount of the loan, and added to it so as to equal the face amount of the note. The interest was charged in advance, and added to the amount of the note in advance. The evidence indicated that plaintiff, on this 1965 loan, was charged an interest rate of 10% which was sufficient evidence of all the constituent elements of usury.

Judge PHILLIPS concurring in the result.

APPEAL by plaintiff from *Leatherwood, Judge.* Judgment entered 5 September 1982 in District Court, SWAIN County. Heard in the Court of Appeals 18 January 1984.

*Pachnowski & Collins by Joseph A. Pachnowski for plaintiff appellant.*

*Holt, Haire, Bridgers & Bryant by R. Phillip Haire for defendant appellee.*

BRASWELL, Judge.

This is an action for usury. Plaintiff appeals from the granting of a directed verdict in favor of defendant at the close of plaintiff's evidence.

Plaintiff alleged in her complaint that she and her husband, since deceased, applied for a loan from the Modern Homes Construction Company (Modern Homes) on 9 February 1965. Modern Homes agreed to make the loan and required plaintiff and her

DeHart v. R/S Financial Corp.

husband to execute a promissory note in the amount of $9,645.12, due and payable in 144 equal installments of $66.98, and secured by a deed of trust. Modern Homes thereafter assigned the note and deed of trust to G.A.C. Trans-World Acceptance Corporation, which in turn assigned the note and deed of trust to defendant. Plaintiff alleged that the interest rate on the note was usurious in that it exceeded the maximum legal rate of interest of six per cent (6%).

Defendant filed an answer in which it denied the allegations of usury and asserted a counterclaim for money owed it by plaintiff for payment of insurance premiums on behalf of plaintiff in accordance with the terms of the deed of trust. Defendant took a voluntary dismissal of its counterclaim upon the granting of its motion for a directed verdict.

A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). In considering a defendant's motion for a directed verdict, the court must examine the evidence in the light most favorable to the plaintiff, resolving all conflicts in his favor and giving the plaintiff the benefit of every inference that reasonably can be drawn in his favor. *Husketh v. Convenient Systems*, 295 N.C. 459, 245 S.E. 2d 507 (1978). The motion should be allowed only when the evidence presented by the plaintiff, taken in the light most favorable to the plaintiff, is insufficient as a matter of law to support a verdict for the plaintiff. *Investment Properties v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1972), *vacated on other grounds*, 283 N.C. 277, 196 S.E. 2d 262 (1973). When the question of granting a motion for directed verdict is close, the better practice is for the trial judge to reserve his decision on the motion and allow the case to be submitted to the jury. *Koonce v. May*, 59 N.C. App. 633, 298 S.E. 2d 69 (1982).

To maintain an action for usury, the claimant must show that there was (1) a loan or forbearance of money, (2) an understanding between the parties that the money loaned shall be repaid, (3) a payment or an agreement to pay a rate of interest greater than that allowed by law, and (4) a corrupt intent to take a greater return than that allowed by law for the use of the money loaned. *Auto Supply v. Vick*, 303 N.C. 30, 277 S.E. 2d 360 (1981); *Bank v. Merrimon*, 260 N.C. 335, 132 S.E. 2d 692 (1963).

Based upon our examination of the plaintiff's evidence in the light most favorable to the plaintiff and giving the plaintiff the benefit of every inference which can be drawn in her favor, we hold that plaintiff presented sufficient evidence to support a prima facie case of usury. The plaintiff's evidence shows the following: In 1965, plaintiff and her late husband, having learned that Modern Homes would lend 100% of the money required to build a house, applied to Modern Homes for a loan for that purpose. Modern Homes agreed not only to lend them $5,600.00, which was 100% of the cost of building the house, but also to build the house for them. Plaintiff and her late husband executed a promissory note in the amount of $9,645.12, payable in 144 equal installments of $66.98. The first payment was due on 1 December 1965, and "payable monthly thereafter on the same day of each month in monthly installments, as specified hereon, until said whole amount has been paid with interest on each installment from maturity thereof until paid at six percentum (6%) per annum." She and her husband also executed a deed of trust as security for the loan. She has made all payments.

In the deed of trust attached as an exhibit to the complaint the amount of insurance coverage is stated to be $5,600.00. In all of the plaintiff's evidence the only sum of money testified about as being the amount of the loan is $5,600.00. Although plaintiff does not deny signing the promissory note in the amount of $9,645.12, nothing supports that sum as being the base amount of the loan. It would appear that interest was computed in some manner on $5,600.00 and added to it so as to equal the face amount of the note. The interest was charged in advance, and added to the amount of the note in advance. The note itself only provides for interest in case of default and from maturity of each installment payment.

Although the figure $5,600.00 does not appear in the complaint, the notice pleading does fully apprise the defendant of the very transaction out of which the claim for usury arises. The evidence of $5,600.00 as being the amount of the loan was not objected to at the trial. Since the usury theory is the only theory for relief raised in the pleadings, no formal amendment of the pleadings was necessary here. As said in *Securities & Exchange Commission v. Rapp*, 304 F. 2d 786, 790 (2d Cir. 1962), cited with approval in *Roberts v. Memorial Park*, 281 N.C. 48, 187 S.E. 2d

721·(1972), and in *Taylor v. Gillespie*, 66 N.C. App. 302, 305, 311 S.E. 2d 362, 364 (filed 7 February 1984), [No. 8317SC209], "A formal amendment to the pleadings 'is needed only when evidence is objected to at trial as not within the scope of the pleadings.'" And, as further stated in *Taylor*, "Because no objection was made to the introduction of the evidence, the pleadings were amended by implication." *Id.*

A certified public accountant testified that, based upon amortization·tables, six per cent (6%) interest on $5,600.00, the principal amount, would yield a monthly payment of $54.65 over twelve years. Payments of interest and principal would therefore total the sum of $7,871.04 over twelve years. Deducting $5,600.00 principal from that total would yield a total of interest of $2,271.04 over twelve years. In contrast, plaintiff was charged $4,045.12 in interest. Further, based upon the same tables, a ten per cent (10%) interest rate would yield a monthly payment of $66.93, which closely approximates the $66.98 monthly payment charged plaintiff, tending to indicate that plaintiff was charged a ten per cent (10%) rate.

Since plaintiff did produce sufficient evidence of all of the constituent elements of usury, the trial court improperly granted the defendant's motion for a directed verdict. Accordingly, the case must be remanded for a new trial.

Reversed and remanded.

Judge WELLS concurs.

Judge PHILLIPS concurs in result.

Judge PHILLIPS concurring in result.

I agree that the verdict was improperly directed against the plaintiff and she is entitled to have the jury pass on her claim, but I do not agree with the majority's statement that: "When the question of granting a motion for directed verdict is close, the better practice is for the trial judge to reserve his decision on the motion and allow the case to be submitted to the jury." Though this same statement or one substantially similar to it has been made in several decisions of this Court and our Supreme

---
**DeHart v. R/S Financial Corp.**
---

Court, it is correct only as far as it goes and certainly does not go far enough. The only proper practice for trial judges to follow in regard to motions for a directed verdict, I am sure, is to reserve their decisions until after the jury verdict in all cases where it is not crystal clear that there has been a failure of proof, and dismissal as a matter of law is therefore necessary.

Following such a course has overwhelming advantages. When such motions have merit, it will usually make it unnecessary for the judge to rule at all, since jurors are as apt to discern an absence of proof as judges are. When such motions are without merit, it will often save the participants and the courts from the inconvenience, delay and expense of an appeal and retrial. And in both instances the litigants will have had their full day in court, no small thing to people in this country, who nearly always prefer the assessment of a jury to that of a judge, and go to court in the firm belief, which our law encourages, that they will receive it.

On the other hand, dismissing actions when the merits of such motions are at all in doubt has only the advantage of possibly shortening the court week and makes no sense whatever. When such motions are first made the trials are nearly always far more than half over; and when they are next made the trials *are* over, except for the relatively trifling tasks of arguing to and charging the jury. In that setting, since the safety valve of judgment notwithstanding the verdict is always available, it would seem that every trial judge would be loath to take a case from the jury and precipitately terminate the trial, thereby risking the possibility that a year or two later, after much expense and effort, the parties, witnesses, lawyers, court, and a new jury will have to start all over again from the beginning.