NED H. MAY AND MIKE D. MAY, DOING BUSINESS AS D. C. MAY COMPANY, A PARTNERSHIP, v. CHARLES C. HAYNES, JR. CONSTRUCTION COMPANY, INC., CHARLES C. HAYNES, JR., AND JANE BARRY HAYNES.

(Filed 18 May, 1960.)

**Frauds, Statute of, § 5—**

Evidence that plaintiffs agreed to do certain construction work, which agreement was made with an individual who was president of the development company and the owner of practically all its shares of stock, upon his representation to the effect that he would be personally liable for the contract price, *is held* sufficient to be submitted to the jury on the question of whether the individual contracted for the work in his individual capacity, as well as in behalf of the corporation, and his agreement is an original promise not coming within the statute of frauds. G.S. 22-1.

APPEAL by defendant Charles C. Haynes, Jr., from *Hall, J.,* October Term, 1959, of DURHAM.

Civil action to recover $4,154.94, allegedly owing by defendants for work (painting and decorating) performed by plaintiffs pursuant to four separate contracts.

Plaintiffs alleged that Charles C. Haynes, Jr., hereafter called Haynes, "for and on behalf of himself and the said corporation," entered into contracts with plaintiffs for four different jobs; that they completed the work on each job; and that defendants have failed to pay any part of the amounts due plaintiffs under said contracts. Plaintiffs alleged the first of these contracts, entered into on or about May 18, 1956, was for painting on property of the corporate defendant designated Fargo 1 and 2, Rosebriar Subdivision, the contract price being $800.00. The later contracts, so plaintiffs alleged, were entered into on or about August 2, 1956, October 4, 1956, and October 15, 1956, respectively.

The corporate defendant, in its answer, admitted it had contracted with plaintiffs as alleged but denied it was indebted to plaintiffs. However, at the trial, the corporate defendant stipulated it was indebted to plaintiffs in the full amount of $4,154.94.

Haynes, in his answer, alleged the four contracts with plaintiff were made solely by the corporation and denied that he, individually, entered into such contracts with plaintiffs. Although designated a defendant in the caption, Jane Barry Haynes, wife of Charles C. Haynes, Jr., filed no answer. Appellant's brief advises that she was not served with summons.

The only evidence was that offered by plaintiffs. At the conclusion thereof, Haynes moved for judgment of nonsuit. His motion was

allowed as to all but the $800.00 allegedly due under the contract of May 18, 1956. Haynes excepted to the denial of his motion in respect of this $800.00 item.

The court submitted, and the jury answered, these issues: "1. Did the defendant Charles C. Haynes, Jr., contract for the painting job at Fargo 1 and 2, Rosebriar Subdivision? ANSWER: Yes. 2. What amount, if any, is plaintiff (sic) entitled to recover of Charles C. Haynes, Jr., in reference to the Fargo 1 and 2, Rosebriar Subdivision painting job? ANSWER: $800.00."

Judgment was entered against the corporation for $4,154.94 and costs and against Haynes for $800.00 and costs, with provisions (not pertinent to this appeal) to the effect that payments on either judgment (up to $800.00, interest and costs) are to be credited on both. Haynes excepted and appealed.

*Brooks & Brooks for plaintiffs, appellees.*
*Daniel K. Edwards for defendant Charles C. Haynes, Jr., appellant.*

BOBBITT, J. The only question is whether the court erred in overruling Haynes' motion for judgment of nonsuit in respect of the $800.00 allegedly due under the contract of May 18, 1956.

There is no controversy as to these facts: A contract was entered into under which plaintiffs were to paint two houses on property known as Fargo 1 and 2, Rosebriar Subdivision, for $800.00. Plaintiffs completed this work on or about May 30, 1956, but have not been paid.

The evidence tends to show the contract was entered into at the Haynes home in Hope Valley, the persons present being (plaintiff) Mike D. May, Haynes and Haynes' wife.

May's testimony, summarized, tends to show: Prior to May 18, 1956, Haynes told May "he was going to build a number of houses in a project" and would like for plaintiffs to do the painting. At that time, May advised Haynes he did not think plaintiffs would be interested. Later, as requested by Haynes, May went to the Haynes home. In the course of the conversation, Haynes explained his plans for building houses in the subdivision, stating that "he (Haynes) had already had the houses financed that he was going to build and that there wouldn't be any question as far as money was concerned." May, being advised that the subdivision property was owned by the corporation, said "there had been a question in his mind regarding his position." Thereupon, Haynes stated that the Haynes home in Hope Valley, owned by him and his wife, with the land around it, was worth

$75,000.00. May then asked, "(W)hat about the corporation?" To this inquiry, Haynes replied: "It's the same thing." Haynes then stated that he and his wife owned the Hope Valley property, owned all of the stock in the corporation and that it was all one and the same thing. May stated, "under those conditions," he would be glad to work with Haynes.

The basic fact is that the agreement with plaintiffs was made by Haynes. The only question is whether, in making the agreement, he was acting solely for the corporate defendant or, as plaintiffs alleged, "for and on behalf of himself and the said corporation."

Haynes had a personal, immediate and pecuniary interest in the transaction. He and his wife owned the entire capital stock of the corporation. (Note: It was alleged and admitted that Haynes *owns* 41 of the 43 shares of the corporation's capital stock and *is* its president, managing officer and controlling stockholder.) To dispel May's doubts as to whether credit should be extended, Haynes cited the value of the Hope Valley property and identified the property and interests of himself and his wife and the corporate property and interests as being one and the same thing. Reasonable inferences may be drawn from this evidence to the effect that Haynes represented to May and assured him that Haynes personally, in addition to the corporation, would be obligated for the payment of the contract price and that this was the agreement upon which plaintiffs accepted and performed the contract. Since such agreement involves an original promise or undertaking on the part of Haynes at the time credit was extended, G.S. 22-1 does not apply. *Warren v. White*, 251 N.C. 729, 112 S.E. 2d 522, where prior decisions are cited and discussed.

The evidence, in our view, was sufficient for submission for jury determination as to whether Haynes, when he contracted for the $800.00 job, did so in his individual capacity as well as in behalf of the corporation, and that Haynes' motion for judgment of nonsuit was properly overruled.

The charge of the trial judge was not included in the record on appeal. Hence, it is presumed the jury was instructed correctly on every applicable principle of law. *Hatcher v. Clayton*, 242 N.C. 450, 88 S.E. 2d 104, and cases cited.

It is noted: The only subject discussed in the said conversation at the Haynes home was the work on the two houses on Fargo 1 and 2, Rosebriar Subdivision. There was no evidence of any conversations relating to the work to be done under the three later contracts referred to in the complaint.

It is noted further: The theory on which plaintiffs sought to recover

and on which the trial was conducted was that Haynes, individually, was a principal party to the contract of May 18, 1956. Hence, whether Haynes is liable under the rule applied in *Lester Brothers v. Insurance Co.*, 250 N.C. 565, 109 S.E. 2d 263, was not and is not presented.

No error.