STUART STUDIO, INC. v. NATIONAL SCHOOL OF HEAVY EQUIPMENT, INC., GILBERT S. SHAW, AND DONALD T. SHAW

No. 7518SC49

(Filed 7 May 1975)

Frauds, Statute of § 5— oral promise to answer another's debt — main purpose rule

Plaintiff's evidence was sufficient for submission to the jury on the issue of whether defendant's oral promise to stand good for the cost of printing catalogues for a school of heavy equipment came within the "main purpose rule" and thus was not within the statute of frauds where it tended to show that defendant was the founder of the school, owned 100% of the Class A voting stock and 49% of the Class B stock, was chairman of the board of directors and as an officer drew a monthly salary of $2,000, that the school was facing financial difficulty and defendant had advanced $12,000 to the school, and that the catalogues were for the purpose of attracting new students and avoiding financial ruin for the school.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 28 August 1974 in Superior Court, GUILFORD County. Heard in the Court of Appeals 20 March 1975.

In this action plaintiff seeks to recover of the defendant, National School of Heavy Equipment, Inc., (hereafter School), and the individual defendants the sum of $18,010.02 under a contract whereby it produced catalogues for use by the School in promoting its services. The School has been adjudged a bankrupt corporation, and plaintiff has obtained a judgment against the School in the sum claimed, plus interest. By amended complaint plaintiff seeks to recover of individual defendant, Gilbert

S. Shaw, the sum of $17,828.02 for purchasing and supervising the printing of the catalogues, claiming that Shaw promised, when the contract was made on 6 March 1972, to stand behind or guarantee payment.

It was stipulated that all work pursuant to the contract was completed and catalogues delivered to and accepted by the School on 7 July 1972.

It appeared from the evidence that Gilbert S. Shaw was Chairman of the Board of Directors of the School and drew a salary of $2,000 per month. He held 100% of the voting stock and 49% of the Class B stock of the School; he employed various members of his family in the operation of the School, including his son, Donald T. Shaw, as President.

Plaintiff is an art studio. Its president, Keith Stuart, had a conversation with Gilbert Shaw and Donald Shaw in August 1971, about the preparation of a new catalogue for the School, and in September, 1971, all agreed that plaintiff was to produce the camera-ready art for the catalogue. Plaintiff completed this work and the School accepted the format. There was a discussion between Stuart and the Shaws about the printing. Plaintiff does not do printing but in some cases purchased the printing for its clients. In a meeting on 6 March 1972, when the camera-ready art work was virtually finished, Gilbert Shaw requested Stuart to purchase and supervise the printing of 25,000 catalogues. They discussed payment of printing costs, and Gilbert Shaw told Stuart that payment would be made within ten days after billing and that if the *National School could not pay the full total that he would stand good for the entire bill.*

Plaintiff then contracted in its name for the printing. The School made an advance payment of $2,000 to plaintiff on 23 March 1972. Plaintiff delivered the catalogues to the School on 7 July 1972 with its invoice. To requests for payment thereafter, Donald T. Shaw, Gilbert S. Shaw being overseas, replied that the School did not have the money but expected to get it.

At the completion of plaintiff's evidence, the individual defendants moved for directed verdicts, and from judgment granting the motions, the plaintiff appeals. It appears from the amended complaint, filed after entry of judgment, that plaintiff has elected to proceed only against the individual defendant, Gilbert S. Shaw.

*Clark, Tanner & Williams by David M. Clark and P. Trevor Sharp for plaintiff.*

*James, Williams, McElroy & Diehl, P.A., by William K. Diehl, Jr., and Gary S. Hemric, Jr., for defendants.*

CLARK, Judge.

On appeal from the granting of a motion for directed verdict this Court must determine if plaintiff has made out a case sufficient to go to the jury, and plaintiff's evidence must be taken as true and considered in the light most favorable to it. *Wilson v. Miller,* 20 N.C. App. 156, 201 S.E. 2d 55 (1973).

The North Carolina Statute of Frauds, a substantial prototype of the historic English statute, 29 Charles II (1676) Ch. 3, Sec. 4, contains the provision that "no action shall be brought . . . upon a special promise to answer the debt . . . of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized." G.S. 22-1.

The promise of Gilbert S. Shaw to stand good for the debt of National School of Heavy Equipment, Inc., to be incurred for the printing of catalogues was not in writing and was within the Statute of Frauds unless plaintiff has offered evidence to invoke the application of the "main purpose rule", which is a well-known exception to the rule requiring that such promises be evidenced by a written memorandum.

The "main purpose rule" is stated in *Burlington Industries v. Foil,* 284 N.C. 740, 748, 202 S.E. 2d 591, 597 (1974), as follows:

" ' . . . [W]henever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' "

The transaction between plaintiff and the defendants involved two separate and distinct operations in the production

of catalogues for the School: (1) the camera-ready art, which plaintiff prepared, and (2) the printing, which was outside the scope of plaintiff's business and was purchased from and done by printers under the supervision of plaintiff. The cost of printing was several times that of the camera-ready art. At the 6 March 1972 meeting, plaintiff's President, Keith Stuart, sought assurances that the cost of printing would be paid within ten days after billing; then Gilbert S. Shaw made the promise that if the School "could not pay the full total that he would stand good for the balance or for the entire bill."

This promise of Gilbert S. Shaw was supported by a new consideration, the agreement to purchase and supervise the printing of the catalogues, which plaintiff had not previously agreed to do. Shaw's personal and pecuniary interest in the transaction was evident; he was the founder of the School, owned 100% of the Class A voting stock and 49% of the Class B stock, was Chairman of the Board of Directors, and as an officer drew a monthly salary of $2,000. At this time, 6 March 1972, it is reasonable to assume that the School was facing financial difficulty; Shaw personally advanced $12,000 to the School during this period of financial distress. The School went into receivership in December 1972, and bankruptcy in March 1973. Apparently, Shaw sought, in a final effort to avoid the School's financial ruin, to attract new students through an advertising campaign, which included the production and circulation of new catalogues.

*Burlington Industries v. Foil, supra,* a 1974 decision, culminates a line of cases which have developed the "main purpose rule" and prescribed its limitations. The *Foil* case holds that the benefit accruing to a party merely by virtue of his position as a stockholder, officer, or director is not alone such personal, immediate and pecuniary benefit as to invoke the main purpose rule, and that Foil's evidence failed to establish the required *direct interest* on the part of Foil.

In *Foil, supra,* the Court cited with approval the cases of *May v. Haynes,* 252 N.C. 583, 114 S.E. 2d 271 (1960) and *Warren v. White,* 251 N.C. 729, 112 S.E. 2d 522 (1960). In *Warren v. White, supra,* defendant promisor was the principal investor and owned most of the capital stock, and during a period of financial difficulty advanced in excess of $23,000 to the corporation. In *May v. Haynes, supra,* the defendant and his wife owned the entire capital stock of the corporation, and he

was its president, managing officer and controlling stockholder. In both of these cases it was held that the evidence was sufficient to invoke the main purpose rule and in doing so it is obvious that the significant, if not controlling, factor was the extent of the promisor's control over the corporation.

In this case the evidence offered by the plaintiff tends to show that Gilbert S. Shaw had a personal and direct interest in the School; and the evidence is clearly sufficient to raise an issue for jury determination. We find that the trial court improvidently granted defendant's motion for directed verdict and the judgment is modified and the cause remanded for trial on the issue of the liability of Gilbert S. Shaw on the printing contract of 6 March 1972.

Modified and remanded.

Judges MORRIS and VAUGHN concur.