BASSETT FURNITURE INDUSTRIES OF NORTH CAROLINA, INC. v.
JAMES HUGH GRIGGS

No. 7915SC899

(Filed 3 June 1980)

1. **Frauds, Statute of § 3– pleading – summary judgment – issue first raised by affidavit**

    While the statute of frauds is an affirmative defense which ordinarily must be pleaded, the N.C. Supreme Court has held that, for the purpose of ruling on a motion for summary judgment, an affirmative defense may be raised for the first time by affidavit.

2. **Frauds, Statute of § 5.1– oral guaranty – main purpose rule – sufficient interest in transaction**

    In an action to recover upon defendant's alleged oral guarantee to pay the debt of a corporation which sold furniture and appliances in which defendant was alleged to possess a substantial interest, there was a genuine issue of material fact as to whether defendant had such a personal, immediate, and pecuniary interest in the transaction so as to bring his promise within the operation of the main purpose rule and thus except it from the statute of frauds where plaintiff offered evidence that defendant was the furniture and appliance corporation's managing director, owned half the stock, and received from it a monthly salary of $3000; the furniture and appliance corporation engaged in repeated and substantial transactions with a corporation in which defendant was the sole stockholder; and defendant's comment allegedly made to plaintiff's employees that defendant wanted to be a millionaire before the age of forty was evidence that defendant himself believed that he had a substantial personal interest in the extension of additional credit to the furniture and appliance corporation.

APPEAL by plaintiff from *Herring, Judge.* Judgment entered 24 July 1979 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 24 March 1980.

Plaintiff corporation brought suit based upon the defendant's alleged oral guarantee to pay the debt of a corporation in which defendant was alleged to possess a substantial interest. In its complaint, plaintiff alleged that defendant was an officer and director of Big Jim's, Inc., a domestic corporation in the business of selling furniture and appliances. Plaintiff further alleged that all of the stock in Big Jim's was owned by Homeway-Carolina, Inc., a corporation in which defendant was also an officer and director, and that all of the shares of Homeway-Carolina were in turn owned by Tire Sales Company, Inc., a

corporation in which defendant owned all of the stock and was an officer and director. In a verified affidavit, an employee of plaintiff stated that defendant, in trying to obtain additional credit from plaintiff for Big Jim's stated:

> You'll never get stuck for a penny. I want to be a millionaire by the time that I am 40 years old and I am two-thirds of the way there. If something ever happens, I'll pay you every penny myself.

Relying on this promise, plaintiff's employee stated that plaintiff extended over $30,000 in credit to defendant which defendant never repaid.

Defendant, answering plaintiff's complaint, admitted that Big Jim's owed plaintiff some amount, that all of the shares of Big Jim's were owned by Homeway-Carolina, that defendant owned all of the stock of Tire Sales Company, and that he was an officer and director of Homeway-Carolina and Tire Sales Company. Defendant, however, denied that Tire Sales Company owned all of the shares of Homeway-Carolina, or that he had orally guaranteed the payment of Big Jim's debt. Defendant did not plead the statute of frauds as an affirmative defense to plaintiff's claim. In an affidavit, defendant admitted that he received a monthly salary from Big Jim's of $3,000, that Tire Sales Company owned half of the shares of Homeway-Carolina and thus that he indirectly owned a one-half interest in Big Jim's, and that there were substantial and recurring intercorporate transactions between Big Jim's and Tire Sales Company. Plaintiff has presented no forecast of evidence which would be available to it at trial to show that defendant owned any more than a one-half interest in Big Jim's. From the trial court's granting of defendant's motion for summary judgment, plaintiff appeals.

*Clifton & Singer, by Richard G. Singer, for plaintiff appellant.*

*Latham, Wood & Balog, by Steve A. Balog, for defendant appellee.*

WELLS, Judge.

Plaintiff first argues that the trial court erred in granting defendant's motion for summary judgment because defendant failed to plead the statute of frauds as an affirmative defense. Pursuant to G.S. 22-1,

> [n]o action shall be brought ... to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

[1] While the statute of frauds is an affirmative defense which ordinarily must be pleaded, G.S. 1A-1, Rule 8(c), our Supreme Court held that for the purpose of ruling on a motion for summary judgment, an affirmative defense may be raised for the first time by affidavit. *Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d 375 (1976); *accord, Cooke v. Cooke*, 34 N.C. App. 124, 237 S.E. 2d 323 (1977), *disc. rev. denied*, 293 N.C. 740, 241 S.E. 2d 513 (1977). As the court explained in *Gillespie*, however, the preferred practice is to require a formal amendment to the pleadings.

[2] Plaintiff next argues that the papers before the trial court demonstrated the existence of a genuine issue of material fact as to whether defendant had such a personal, immediate, and pecuniary interest in the transaction as to bring his promise within the operation of the "main purpose rule" and thus except it from the requirements of the statute of frauds. North Carolina has long recognized the exception to the statute of frauds generally referred to as either the "main purpose rule" or the "leading object rule." *Burlington Industries v. Foil*, 284 N.C. 740, 202 S.E. 2d 591 (1974). The general application of the rule was set out in *Burlington Industries* as follows:

> Generally, if it is concluded that the promisor has the requisite personal, immediate, and pecuniary interest in the transaction in which a third party is the primary obligor, then the promise is said to be original rather than collater-

al and therefore need not be in writing to be binding. Professor Lee, in North Carolina Law of Suretyship 12 (3d Ed. 1970), notes that the main purpose rule is applicable when a court has determined that the promisor's "answering for the debt or default of another is merely incidental to his broader purposes. He is participating in the principal contract and making its obligation his own. The expected advantage to the promisor must be such as to justify the conclusion that his main purpose in making the promise is to advance his own interests."

*Id.*, 284 N.C. at 748-749, 202 S.E. 2d at 597. In *Burlington Industries*, the defendant stockholder and director owned a 16⅔ percent interest in the corporation whose debt he allegedly guaranteed, but his investment in the corporation totalled only $750, while credit extended by the plaintiff to the corporation amounted to $125,000. Justice Moore, writing for the Court, held that such an interest was too indirect and remote to invoke application of the main purpose rule.

In *Burlington Industries*, the Court discussed at length the development and application of the main purpose rule in North Carolina. Justice Moore, quoting from Annot., 35 A.L.R. 2d 906, 910-911, 914 (1954), pointed out an important distinction in the rule recognized by our Supreme Court

"As applied to promises by stockholders, officers, or directors, to pay a debt of the corporation, it may be said that the promise is original where the promisor's primary object was to secure some direct and personal benefit from the performance by the promisee of his contract with the corporation, or from the latter's refraining from exercising against the corporation some right existing in him by virtue of the contract. *The benefit to the promisor is to be distinguished from the indirect benefit which would accrue to him merely by virtue of his position as a stockholder, officer, or director.* If the benefit accruing is direct and personal, then the promise is original within the rule above discussed, and the validity thereof is not affected by the statute of frauds." (Emphasis added.) [Citation omitted.]

"Where an oral promise by a stockholder, officer, or director of a corporation is collateral in form and effect, and the consideration was not intended to secure or promote some personal object or advantage of the promisor — as distinguished from the benefit accruing to a person from the mere fact of his being a stockholder, officer or director —, the promise is collateral and within the statute of frauds." [Citation omitted.]

*Id.*, 284 N.C. at 749-750, 202 S.E. 2d at 598.

The foregoing comments provide the basis upon which the ultimate disposition of the issue by the Court in *Burlington Industries* may be reconciled with other cases in which the transaction has been held to be sufficiently direct and personal to come within the operation of the main purpose rule. In *Studio, Inc. v. School of Heavy Equipment*, 25 N.C. App. 544, 214 S.E. 2d 192 (1975) one of the individual defendants orally guaranteed the debt of a corporation in which he served as chairman of the board of directors, drew a monthly salary of $2,000, and owned all of one class of stock and 49 percent of another class of stock. We held that the trial court had improvidently granted this defendant's motion for a directed verdict, since a jury could have found that the defendant's interest in the corporation was sufficient to allow application of the main purpose rule. In *Studio, Inc.*, we recognized the thrust of *Burlington Industries*:

> *Burlington Industries v. Foil, supra,* a 1974 decision, culminates a line of cases which have developed the "main purpose rule" and prescribed its limitations. The *Foil* case holds that the benefit accruing to a party merely by virtue of his position as a stockholder, officer, or director is not alone such personal, immediate and pecuniary benefit as to invoke the main purpose rule. . . .

*Id.*, 25 N.C. App. at 547, 214 S.E. 2d at 194; *accord, Warren v. White*, 251 N.C. 729, 112 S.E. 2d 522 (1960); *Supply Co. v. Motel Development*, 32 N.C. App. 199, 231 S.E. 2d 201 (1977); *see*, Note, *Statute of Frauds — The Main Purpose Doctrine in North Carolina*, 13 N.C.L. REV. 263 (1935).

In the case *sub judice* there was evidence that defendant was Big Jim's managing director, owned half of the stock, and received from it a monthly salary of $3,000. There was also evidence that Big Jim's engaged in repeated and substantial transactions with a corporation in which defendant was the sole stockholder. The comment which defendant allegedly made to plaintiff's employees, that defendant wanted to be a millionaire before the age of forty, is evidence that defendant himself believed that he had a substantial personal interest in the extension of additional credit to Big Jim's. Considered as a whole, the evidence in this case tends to show such direct, personal, and immediate interest on the part of defendant as to distinguish it from *Burlington Industries* and present a question for the jury concerning the application of the main purpose rule. Accordingly, we hold that summary judgment was improvidently granted.

Reversed.

Chief Judge MORRIS and Judge PARKER concur.