NO. COA13-868

NORTH CAROLINA COURT OF APPEALS

Filed:  18 March 2014

CHRISTOPHER BROWN, D.D.S.,
     Plaintiff,

     v.                              Mecklenburg County
                                     No. 11 CVS 18370
ARTISAN 2510, INC., ARTISAN 2510,
INCORPORATED, ANTHM DESIGN CO.,
INC., ANTHONY MURPHY, and MICHAEL
FERRONE,
     Defendants.


Appeal by Michael Ferrone from order filed 9 March 2012 by

Judge W. Robert Bell, order filed 4 February 2013 by Judge H.

William Constangy, and order filed 16 April 2013 by Judge

Richard D. Boner, each in Mecklenburg County Superior Court.

Heard in the Court of Appeals 10 December 2014.


> *JAMES, McELROY & DIEHL, P.A., by Preston O. Odom, III, Fred
> B. Monroe, and John R. Brickley, for plaintiff.*

> *HIGGINS BENJAMIN PLLC, by Gilbert J. Andia, Jr., for
> defendant Michael Ferrone.*


ELMORE, Judge.


Michael Ferrone (Ferrone), the sole appellant-defendant in

the instant action, appeals the trial court's denial of his

motion to dismiss pursuant to Rule 12(b)(2) for lack of personal

jurisdiction and the entry of the order granting summary judgment against him on Dr. Chris Brown's (Dr. Brown) claims of breach of contract and violations of the North Carolina Securities Act under Chapter 78A. He also appeals the trial court's award of attorney's fees and costs of $37,981.31. After careful consideration, we affirm in part, reverse and remand in part, and vacate in part.

## I.    **Factual Background**

The evidence in the record shows that Ferrone and Anthony Murphy (Murphy) formed, managed, and operated Artisan 2510, Inc. (Artisan 2510), an apparel company. Murphy was the Chief Executive Officer whose role was to direct the design/artistic side of the apparel company, while Ferrone was the President and Chief Financial Officer whose role was to handle the promotion of the company. Each were 50 percent owners. There is some dispute as to whether Artisan 2510 was first formed (perhaps incorrectly) as a Nevada corporation, and later licensed to do business in New Jersey.[1] Murphy is a New Jersey resident and Ferrone is a resident of Massachusetts.

---

[1] Ferrone believed that Artisan was originally created as a Nevada corporation but he was later provided documentation that Artisan was licensed to do business in New Jersey.

In early June 2010, Ferrone contacted Dr. Brown, a resident of North Carolina, to solicit a $100,000 investment in Artisan 2510. Dr. Brown and Ferrone had known each other for approximately 8 years and had previously engaged in business dealings together. Ferrone and Murphy represented to Dr. Brown that Artisan 2510 was a growing clothing company, and specifically offered to sell him a ten percent shareholder interest, which amounted to 222,000 shares of stock in Artisan 2510. In addition, Dr. Brown alleges that they offered to pay him 15 percent interest per year on his investment.

In negotiating the deal, Ferrone communicated with Dr. Brown via phone, text, and email. On or about 10 June 2010, Dr. Brown received a PowerPoint presentation, which included photographs of clothing and information about the company. In an email dated 23 June 2010, Ferrone informed Dr. Brown that his investment would be used to defray product development and production expenses and secure showroom space. At no time during the negotiations did Ferrone or Murphy maintain a physical presence in North Carolina.

Based on Murphy and Ferrone's representations, Dr. Brown agreed to invest $100,000 in Artisan 2510. Ferrone had a Purchase Agreement drafted and emailed to Dr. Brown on or about

22 June 2012. Dr. Brown sent two separate $50,000 checks made payable to Artisan 2510, Inc. The first check was sent 27 June 2010, and the second was sent on or about 13 July 2010. Dr. Brown understood that the stock certificates would be issued and sent to him upon receipt of each check.

Despite Dr. Brown's payment, Artisan 2510 failed and refused to deliver the stock share certificates. Throughout the remainder of 2010, Dr. Brown contacted Ferrone on numerous occasions to request the stock certificates—to no avail. Upon Dr. Brown's information, he alleges that Ferrone and Murphy never applied his investment towards Artisan, but instead used the money to fund Anthm and/or Artisan 2, separate clothing and design companies, and to cover their personal expenses.

Dr. Brown demanded the return of his investment, and he and Ferrone began negotiating the terms of a payback settlement (the settlement agreement). Dr. Brown points to two emails dated 14 April 2011 as evidence of the terms of a mutually agreed upon settlement agreement. In the first email, Ferrone offered a total payback sum of $150,000, and stated that as "a gesture of good faith" Dr. Brown would receive $5,000 towards the settlement on or before 28 April 2011. In a second email sent approximately 30 minutes later, Ferrone included a definitive

repayment schedule, which was to commence on 25 May 2011. Dr. Brown received the "good faith" payment of $5,000, but no additional payments were made pursuant to the settlement agreement.

Dr. Brown filed a complaint against Artisan 2510, Inc. Artisan 2510, Incorporated, Anthm Design Co., Inc., Anthony Murphy, and Michael Ferrone for 1) breach of contract, specifically the settlement agreement; 2) unjust enrichment; 3) fraud; 4) facilitation of fraud/conspiracy; 5) unfair and deceptive trade practices; 6) conversion; 7) violations of Chapter 78A; 8) piercing the corporate veil; and 9) punitive damages. He alleged that Ferrone and Murphy were the owners, agents, and alter egos of Artisan, Artisan 2, and Anthm and that the three corporate entities are indistinguishable. As such, Ferrone and Murphy are jointly and severally liable for each cause of action.

The trial court granted Dr. Brown's motion for entry of default pursuant to Rule 55 against Artisan 2510, Inc. Artisan 2510, Incorporated, Anthm Design Co., Inc., and Anthony Murphy. Thereafter, the trial court granted Dr. Brown's motion for Summary Judgment against Ferrone on the claims of breach of contract and violations of Chapter 78A. Ferrone now appeals.

## II.  <u>Personal Jurisdiction</u>

Ferrone argues that the trial court erred in finding that it could exercise *in personam* jurisdiction over him.  We disagree.

We review a trial court's order determining personal jurisdiction to see "whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999).  However, under Rule 52(a)(2) "the trial court is not required to make specific findings of fact unless requested by a party.  When the record contains no findings of fact, [i]t is presumed . . . that the court on proper evidence found facts to support its judgment." *Banc of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.,* 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (citations and quotations omitted) (alteration in original).

In the case *sub judice*, the record does not show that either party requested the trial court to make specific findings of fact.  We presume that the trial judge made factual findings sufficient to support his ruling based on the affidavits of the parties, the pleadings, authorities presented, and arguments of

counsel. However, we do not have a copy of the transcript as part of the record on appeal. Accordingly, we review this issue for sufficiency of the evidence based on the record before us. *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350 S.E.2d 111, 114 (1986).

"A two-step test is utilized to resolve a question of *in personam* jurisdiction over a non-resident defendant: (1) Does a basis for jurisdiction exist under the North Carolina 'long-arm' statute, [] and (2) If so, will the exercise of this jurisdiction over the defendant comport with constitutional standards of due process?" *Id.* at 283, 350 S.E.2d at 113. Ferrone concedes that a basis for jurisdiction exists under North Carolina's "long-arm" statute, and, therefore, we need not address the first step of the test.

"To satisfy the due process prong of the personal jurisdiction analysis, there must be sufficient 'minimum contacts' between the nonresident defendant and our state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v.*

*Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278, 283 (1940)). The United States Supreme Court has recognized two bases for finding sufficient minimum contacts: (1) general jurisdiction and (2) specific jurisdiction. *Evergreen,* 169 N.C. App. at 696, 611 S.E.2d at 184. General jurisdiction may be maintained "even if the cause of action is unrelated to defendant's activities in the forum as long as there are sufficient 'continuous and systematic' contacts between defendant and the forum state." *Id.* (quotation omitted). "Specific jurisdiction exists when the controversy arises out of the defendant's contacts with the forum state[,]" making the cause of the action the basis for the exercise of *in personam* jurisdiction. *Id.* (quotation omitted).

In determining whether minimum contacts exist, the following factors are to be considered in relation to the circumstances of the case: "(1) quantity of the contacts, (2) nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) convenience to the parties." *New Bern Pool & Supply Co. v. Graubart*, 94 N.C. App. 619, 624, 381 S.E.2d 156, 159 (1989), *aff'd*, 326 N.C. 480, 390

S.E.2d 137 (1990) (quotation omitted). All factors are to be considered.

"A contractual relationship between a North Carolina resident and an out-of-state party alone does not automatically establish the necessary minimum contacts with this State;" however, a single contract "may establish the necessary minimum contacts where it is shown that the contract was voluntarily entered into and has a 'substantial connection' with this State." *Evergreen*, 169 N.C. App. at 696, 611 S.E.2d at 184 (citation and quotation omitted). The parties' prior negotiations and actual course of dealing, along with the terms of the contract, are relevant factors in a 'minimum contacts' analysis. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L. Ed. 528 (1985). Further, "[w]hich party initiates the contact is taken to be a critical factor in assessing whether a nonresident defendant has made 'purposeful availment' [of the privilege of conducting activities within the forum State]." *Evergreen*, 169 N.C. App. at 698, 611 S.E.2d at 185 (citation and quotation omitted) (alteration in original). "[W]here a defendant is an officer and principal shareholder of a corporation, . . . we consider his corporate actions in determining personal jurisdiction[.]" *Saft Am., Inc. v.*

*Plainview Batteries, Inc.*, 189 N.C. App. 579, 598, 659 S.E.2d 39, 51 (2008), *rev'd in part*, 363 N.C. 5, 673 S.E.2d 864 (2009).

## A. <u>Quantity, Nature, and Quality of the Contacts & Due Process</u>

In the present case, Dr. Brown offered the following evidence to support a finding of specific jurisdiction. In his affidavit, Dr. Brown alleged that Ferrone "systematically and repeatedly" contacted him in North Carolina via email and telephone to convince him to invest in Artisan 2510. At that time, Dr. Brown and Ferrone had been acquaintances for approximately 8 years, had previously invested together, and had sat on the same board of directors.

Additionally, Ferrone sent an offer via email on 21 June 2010, wherein he promised to provide Dr. Brown with 220,000 shares of stock in Artisan 2510 in exchange for a $100,000 investment. Ferrone then emailed Artisan's business plan and a PowerPoint presentation regarding the financials of the company to Dr. Brown. Once Dr. Brown decided to invest, Ferrone had a Purchase Agreement drafted and sent electronically to Dr. Brown. Dr. Brown signed and returned the Purchase Agreement to Ferrone and subsequently mailed two $50,000 checks from North Carolina.

Ferrone's affidavit also describes systematic and repeated contact with Dr. Brown in North Carolina: "On March 11, 2011, I

sent an email to [p]laintiff with a proposed Promissory Note for $150,000;" "I emailed a revised copy of the Purchase Agreement to [pl]aintiff;" "[a] series of emails are attached [] demonstrating a string of communication" with plaintiff; "[a]s I mentioned in our chat last night, we are in the process of accounting and figuring how to return your funds and profit."

Additionally, the record contains evidence that Dr. Brown and Ferrone negotiated a settlement agreement, and Dr. Brown received the first $5,000 repayment in North Carolina per its terms. Importantly, the record also shows that Ferrone initiated contact with Dr. Brown, which, again, is considered a critical factor in assessing 'purposeful availment.' *See Evergreen, supra.* Upon review, we conclude that the relationship between Ferrone and the forum was such that he should reasonably have anticipated being haled into court. The contact between Ferrone and Dr. Brown had substantial connections to North Carolina, and, therefore, Dr. Brown purposefully availed himself of the protection and benefit of our laws.

**B. <u>The Interest of the Forum State & the Convenience to the Parties</u>**

When the trial court "concludes that a defendant has purposefully established minimum contacts within the forum State, the court must also consider those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Evergreen*, 169 N.C. App. at 699, 611 S.E.2d at 186 (quotation and ciation omitted). In doing so, we consider "(1) the interest of North Carolina and (2) the convenience of the forum to the parties." *Id*.

In regards to North Carolina's interest, Ferrone argues that it is New Jersey, not North Carolina, that is the appropriate forum for litigation as the Purchase Agreement contained a choice-of-law provision favoring New Jersey law. However, we have held that "[w]hile choice of law clauses are not determinative of personal jurisdiction, they express the intention of the parties and are a factor in determining whether minimum contacts exist and due process was met. This factor does not, therefore, favor one party over the other." *Id*. at 700, 611 S.E.2d at 186. (quotation and citation omitted) (alteration in original). Here, the record reflects that neither Ferrone nor Murphy signed the Purchase Agreement, and we give little weight to its terms. More importantly, Dr. Brown

has sued to enforce the parties' settlement agreement, not the original investment contract.

With respect to the convenience to the parties, North Carolina is certainly the more convenient forum for Dr. Brown, and this State has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Baker v. Lanier Marine Liquidators, Inc.*, 187 N.C. App. 711, 716, 654 S.E.2d 41, 45 (2007) (citation and quotation omitted). As Ferrone has failed to convince us otherwise, we hold that North Carolina is a convenient forum to determine the rights of the parties.

## III. <u>Standard of Review</u>

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "The burden on the moving party to show that no genuine issues of fact exist may be met by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing

party cannot produce enough evidence to support an essential element of his claim." *Miller v. Rose*, 138 N.C. App. 582, 585-86, 532 S.E.2d 228, 231 (2000) (citation and quotation omitted).

## IV. <u>Discussion</u>

We next address whether the trial court erred in finding that Mr. Ferrone was personally liable to Dr. Brown for breach of contract. Dr. Brown alleges: "There are two independent bases under which this Court can affirm Mr. Ferrone's personal liability under the aforementioned agreement: piercing the corporate veil and Mr. Ferrone's personal guaranty."

### A. <u>Personal Liability and Piercing the Corporate Veil</u>

In Dr. Brown's 5 October 2011 complaint, the eighth claim for relief is "Piercing the Corporate Veil/Alter Ego." However, in a document entitled "Voluntary Dismissal Without Prejudice," filed 12 April 2013, Dr. Brown stated that he "hereby dismissed, without prejudice, the claims against Defendant Michael Ferrone for which Plaintiff was not granted summary judgment. Specifically, Plaintiff hereby dismisses . . . piercing the corporate veil/alter ego[.]" Accordingly, we decline to address Dr. Brown's argument as to piercing the corporate veil/alter ego on appeal.

### B. <u>Guaranty Contract</u>

The only remaining theory that Dr. Brown offers to hold Ferrone personally liable for the breach of the settlement agreement is due to a guaranty contract.

Generally, a promise to answer for another's debt falls within the statute of frauds and must be in writing to be enforceable. N.C. Gen. Stat. § 22-1 (2013) mandates that "[n]o action shall be brought . . . to charge any defendant upon a special promise to answer the debt . . . of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith[.]" In addition, a promise to personally repay the debt of another must be supported by sufficient consideration. "A guaranty contract is supported by sufficient consideration if it is based on a benefit passing to the guarantor or a detriment to the guarantee. When the guaranty, as in this case, involves a preexisting debt, it must be supported by some new consideration other than the original debt." *Carolina E., Inc. v. Benson Agri Supply, Inc.,* 66 N.C. App. 180, 182, 310 S.E.2d 393, 395 (1984) (citations omitted).

However, there exists an exception to the general rule. Under the "main purpose rule" a promise to pay the debt of another falls outside the statute of frauds "if it is concluded

that the promisor has the requisite personal, immediate, and pecuniary interest in the transaction in which a third party is the primary obligor[.]" *Terrell v. Kaplan*, 170 N.C. App. 667, 670, 613 S.E.2d 526, 528 (2005) (quotation and citation omitted). In such cases, "the promise is said to be original rather than collateral and therefore need not be in writing to be binding." *Id.; see also, e.g., Stuart Studio, Inc. v. Nat'l School of Heavy Equip., Inc.*, 25 N.C. App. 544, 546, 214 S.E.2d 192, 193 (1975) (Where "the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, . . . his promise is not within the statute [of frauds][.]" (quotation omitted).).

In the case *sub judice*, Dr. Brown contends that the main purpose rule is applicable to these facts. Specifically, Dr. Brown argues that Ferrone had the requisite personal, immediate, and pecuniary interest in the transaction: "Ferrone certainly had a personal interest in Dr. Brown investing in Artisan 2510 as an officer and/or shareholder, and because he had similarly invested in the business." However, after carefully reviewing the record, we find a genuine issue of material fact exists as to (1) whether an oral guaranty was given, and (2) whether an application of the main purpose rule is warranted on the facts

of this case. Accordingly, we find summary judgment was improperly granted on Dr. Brown's claim for breach of the settlement agreement.

C. **Violation of Chapter 78A**

Ferrone argues that the trial court erred in granting Dr. Brown's motion for summary judgment on his claim for violations of the North Carolina Securities Act under Chapter 78A. We agree.

Because Dr. Brown alleges that Ferrone and Murphy were the owners, agents, and alter egos of Artisan, he brought this claim against Ferrone under the theory of joint and several liability. As such, we look to Ferrone's primary liability under N.C. Gen. Stat. § 78A. From the face of the order, we presume that the trial court found that Ferrone violated N.C. Gen. Stat. § 78A-56(a)(2), which imposes civil liability upon any person who:

> Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the untruth or omission[.]

N.C. Gen. Stat. § 78A-56 (a)(2) (2013).

We further note that any person who directly or indirectly controls a person liable under N.C. Gen. Stat. § 78A-56(a) "is also liable jointly and severally . . . unless able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." N.C. Gen. Stat. § 78A-56(c)(1) (2013).

A statement is material if "there is a substantial likelihood that a reasonable [purchaser] would consider it important in deciding [whether or not to purchase]. *State v. Williams*, 98 N.C. App. 274, 280, 390 S.E.2d 746, 749 (1990), or if a reasonable purchaser "would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004)). A question of materiality is generally fact based and for the jury to decide. *Tharrington v. Sturdivant Life Ins. Co.*, 115 N.C. App. 123, 127, 443 S.E.2d 797, 800 (1994).

In the present case, Dr. Brown alleged in his complaint that "[d]efendants represented that they would pay [Dr. Brown] 15% interest per year on his investment." Ferrone denied this allegation in his answer. Additionally, Dr. Brown alleged that "[b]ased on [d]efendants' representations, [Dr. Brown] agreed to

invest $100,000 in Artisan[.]" Ferrone also denied this allegation in his answer. Dr. Brown further alleged in his complaint that "[d]efendants also represented that [Dr. Brown's] investment was sound because the clothing product line doubles the company's net profit each clothing season, and that there are eight seasons per year." Ferrone denied this allegation in his answer. The record indicates that there remains a genuine issue of material fact as to whether Ferrone made any misleading statements to Dr. Brown in violation of N.C. Gen. Stat § 78A-56(a)(2). This issue involves a genuine issue of material fact and is for a jury to decide. *See id*. As such, we cannot sustain the trial court's decision to grant summary judgment on this issue.

Finally, we recognize that Judge Richard D. Boner granted Dr. Brown's motion for attorney's fees and costs pursuant to N.C. Gen. Stat. § 78A-56(a) based on Judge H. William Constangy's order. However, as we determined that the trial court erred in granting summary judgment against Ferrone for violating Chapter 78A, we vacate the order which grants Dr. Brown's motion for attorney's fees and costs.

## V. Conclusion

In sum, the trial court did not err in denying Ferrone's pre-answer motion to dismiss for lack of personal jurisdiction. The exercise of *in personam* jurisdiction over Ferrone does not violate his due process rights. However, the trial court erred in granting summary judgment on Dr. Brown's claims for breach of contract and violations of Chapter 78A. The issue of whether Ferrone is personally liable for the breach of the settlement agreement is best placed before a jury. Further, the record is insufficient to support the trial court's determination that Ferrone is liable for violations of Chapter 78A. Accordingly, the trial court's order granting Dr. Brown's motion for attorney's fees and costs is vacated. We reverse and remand to the trial court for further action consistent with this opinion.

Affirmed in part; reversed and remanded in part; vacated in part.

Judges McGEE and HUNTER, Robert, C., concur.

Report per Rule 30(e).